**John Richard GORDON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 61674, 61675.**

Court of Criminal Appeals of Texas, Panel No. 1.

May 26, 1982.

Rehearing Denied June 23, 1982.

---

Neil Siegel, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Steven R. Hatch, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Consolidation of prosecutions for offenses against property defined in V.T.C.A. Penal Code, Title 7, is authorized by *id.*, Chapter 3, but such "innovation" may cause more problems than it is intended to solve,[1] as these two consolidated causes demonstrate.

Both are alleged by indictment to be burglary of respective habitations during the month of April 1978. Our Cause No. 61,674 is number 31923–34 in the trial court; it pertains to burglary of the habitation of one Diane S. Robinson on or about April 17, 1978, in the manner denounced by V.T.C.A. Penal Code, § 30.02(a)(1); the indictment also avers a prior conviction for enhancement of punishment. Our Cause No. 61,675 is number 31936–34 in the trial court; it involves burglary of the habitation of one Madeline Sheldon on or about April 5, 1978, in the manner proscribed by *id.*, § 30.-02(a)(3). They were consolidated for trial by the trial court on motion of the State, apparently without objection, and together proceeded to trial on announcements of ready October 17, 1978.

However, after the jury had been selected and in its presence appellant pleaded not guilty in our Cause No. 61,675—"the Sheldon case"—when the indictment in our Cause No. 61,674 was read—"the Robinson case"—appellant seems to have surprised some by entering a plea of guilty. The jury was retired, the trial court properly admonished appellant, including the possible range of enhanced punishment, and accepted his plea of guilty to the primary offense, understanding that his plea would be "not true" to the enhancement allegation. With the jury back in the courtroom, the State then made an opening statement to the effect that its order of presentation would be first the Sheldon case, in which a plea of not guilty had been entered, followed by evidence going to the Robinson case. And that is the way the two cases were tried.

Before finding appellant guilty of both burglaries, however, the jury became perplexed over its functions and responsibilities in the premises. Since sufficiency of the evidence in the Sheldon case is challenged, we will summarize enough of it to determine that issue and at the same time provide a backdrop to the first of several problems the jury would create.[2]

Ms. Sheldon testified that at about 11:15 p. m. in the evening of April 5, 1978, "this young man,"[3] appellant, came to the door of her residence and inquired about some people who lived on her street and where Laramie was; she directed him "up north." Fifteen or twenty minutes later he returned and asked leave to use her telephone; she opened the door and let him in. Ms. Sheldon saw him dial and heard him "pretend that he was talking to someone." That done, appellant turned, shook her hand, thanked her for the hospitality and announced, "I'm going to take your stereo." When she protested, appellant showed Ms. Sheldon a hand with brass knuckles. Appellant disconnected the stereo, tucked it under his arm and commanded Ms. Sheldon to get her pocketbook, but when she said she had no money appellant ran out with the stereo.

Across the street, a female neighbor and her boy friend were in a parked car. They watched every move made by appellant from outside the Sheldon residence from the time he first approached it until he

---

1. See *Caughorn v. State*, 549 S.W.2d 196, 197 (Tex.Cr.App.1977).

2. We will have to make do without sixteen exhibits the prosecution deemed important enough to introduce into evidence. Wherever they are is not in either record before us.

3. Appellant was nineteen years of age; though her age is not given Ms. Sheldon must be up in years for she told of suffering a "stroke" thirty years ago.

hurriedly departed with "some kind of square object" under his arm, and then called the police.

The State then presented witnesses to testify to the admitted burglary and its aftermath in the Robinson case.[4] As soon as the State rested, appellant moved for a directed verdict of not guilty in the Sheldon case in that she had given appellant permission to enter her residence, so his taking the stereo constituted theft, but not burglary. The State argued that appellant had "lured his way into her house under the pretense of wanting to use her phone," so his entry was "secured by fraud," thereby negating effective consent. The motion was overruled by the trial court and the case was submitted to the jury on a charge of the court to which appellant expressly voiced "no objections." [5]

■ We agree that the trial court correctly overruled the motion for a directed verdict of not guilty in Cause No. 61,675. Applying the constitutional minimum standard required to enforce the due process right to freedom from conviction except on

proof beyond a reasonable doubt, *Griffin v. State*, 614 S.W.2d 155, 158 (Tex.Cr.App. 1981), after viewing the evidence in the light most favorable to the prosecution, we are satisfied that any rational trier of fact could have found the essential element of entry without the effective consent of Ms. Sheldon, beyond a reasonable doubt.[6] Appellant is right in his contention that "there must be an intent to commit theft at the time a person enters a habitation, Article 30.02(a)(1)," however the Sheldon burglary was alleged under § 30.02(a)(3): a person commits an offense if, without the effective consent of the owner, he enters a habitation and commits or attempts to commit theft. The third ground of error is overruled.

In jury argument suffice to say the parties elaborated on the respective contentions made to the trial court on motion for directed verdict. The jury retired at 10:45 a. m., October 18, but thereafter sent out its first note to the court, to wit:

"May we take the testimonies of the 2nd case into consideration in determining a verdict of the 1st case?" [7]

---

4. At about one o'clock in the morning her door bell rang, and Ms. Robinson went to the door, heard a voice ask if it were the Fisher residence and answered falsely that they lived "two doors down." From the sounds made the person departed across her lawn; later she heard noises outside her house, and called the police. As she was speaking about a prowler, Ms. Robinson heard the back screen door open, then a "loud bang" on the wood door. Suddenly someone was on the front porch, peeking in the curtains, but she heard footsteps on the driveway as the person walked to the back again. This time the back door was broken open and, as she sat petrified in her living room, appellant jumped out from the dining area toward Ms. Robinson with a hammer raised in his hand. He threatened to kill her, demanded money and received six dollars, and took her to a pantry where he commanded her to take off her clothes. The door bell started ringing, there were flashlights shining and calls of "police, police." Appellant rushed to the back door and closed it, then went to the front and ran out into arms of policemen. He made the serious mistake of striking at one of them with the hammer. A search produced the six dollars taken from Ms. Robinson.

5. The trial court drew on McClung, Jury Charges for Texas Practice (Revised Edition, January 1981) 152 for an abstract definition of "effective consent." In turn, McClung seems to have fashioned his definition from a combination of V.T.C.A. Penal Code, §§ 1.07(a)(9) and (12), viz: " 'Effective consent' means assent in fact, whether express or apparent, and includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by force, threats, or fraud." Compare with Morrison & Blackwell, Willson's Texas Criminal Forms Annotated (Eighth Edition) § 100.01, 8 Texas Practice 374 and Texas Criminal Pattern Jury Charges (State Bar of Texas 1975) CPJC 30.02(a)(3), 294.

6. The constitutional standard we apply comes from *Jackson v. Virginia*, 445 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

7. Just below "case" in a different hand and color appears "31936–34."

Over an objection of appellant that apparently had been discussed in chambers,[8] the trial judge responded:

"Ladies and Gentlemen: All evidence presented is before the jury and you are referred to that portion of the charge which recites that you are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given to the testimony."

This action is challenged by appellant in his second "point of appeal," his contention being the trial court erred in allowing the jury "unlimited discretion in considering the weight of an extraneous offense" in that use of such an offense "is limited to certain well recognized exceptions." Supporting the trial court, the State doubts that the usual rules and procedure for dealing with an extraneous offense are applicable to this consolidated trial, but contends that if they are the testimony came in without limitation and with objection as "a direct and natural result" of failure of appellant to exercise his right to a severance under V.T.C.A. Penal Code, § 3.04.[9] We are not satisfied that either analysis resolves the problem.

■ The Practice Commentary following id., § 3.01 explains that "joinder is wholly permissive" and laments that Chapter 3 is "such a pale copy of the . . . [1970 proposed code] . . . that one wonders if all the energy expended to produce *something* permitting offense joinder couldn't have been put to better use on other topics in the code [emphasis in original]."[10] Indeed, in its first look by the Court § 3.02 was perceived as "giving the accused a *mandatory right* to consolidate pending indictments for trial before one jury panel [emphasis in original]," *Johnson v. State*, 509 S.W.2d 322, 323 (Tex.Cr.App.1974), but that dicta was disapproved by this Court in *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex.Cr.App. 1980), in light of *Smith v. State*, 575 S.W.2d 41 (Tex.Cr.App.1979) and *Caughorn v. State*, supra. What became clear was that consolidation of separate indictments for trial may be accomplished by the State giving the thirty day notice required by § 3.02(b) and acquiescence thereto by the accused.[11] *Smith v. State*, supra; *Caughorn v. State*, supra; *Waythe v. State*, 533 S.W.2d 802, 803 (Tex.Cr.App.1976): "We hold, therefore, that Sec. 3.04(a) is mandatory and that the trial court erred in failing to grant appellant's motion for severance." See also *Overton v. State*, 552 S.W.2d 849 (Tex.Cr.App.1977), finding reversible error in denying a motion to quash a single indictment containing two counts of aggravated robbery on grounds accused would be prejudiced by joinder, it being construed to be a request for severance.

■ The consolidation scheme that the Legislature did provide, though "wholly permissive," sought to achieve "convenience and efficiency, permitting one trial on the joined counts, and treating the separate offenses as one for sentencing purposes,"

---

8. Counsel asked that the answer "be phrased so that each case should be cited [sic] on its own merits. But under the circumstances—I think we had discussed that in Chambers—I believe that this is the only answer that I think we can agree to at this point." The judge then let the record reflect that "to the extent that your requested instruction exceeds or varies from the one proposed by the Court, your exception is taken and it's overruled."

9. Section 3.04(a), supra, provides that whenever two or more offenses have been consolidated or joined for trial under § 3.02, "the defendant shall have a right to a severance of the offenses."

10. See also *Waythe v. State*, 533 S.W.2d 802 (Tex.Cr.App.1976) in which it was discerned: "Instead of adopting the liberal joinder of offenses with a severance in the discretion of the court upon a showing of prejudice, the Texas legislature adopted the rule requiring a mandatory severance."

11. An accused who participates in a trial of consolidated charges of felony offenses against him practically "agrees his conduct fits the definition" of "criminal episode" in § 3.01, Practice Commentary.

*Haliburton v. State*, 578 S.W.2d 726, 729 [12] (Tex.Cr.App.1979). Thus, the otherwise settled rule that when in the same indictment two or more felonies are alleged in different counts the accused may be convicted of only one count "does not now apply to offenses against property," *Garcia v. State*, 574 S.W.2d 133, 135 (Tex.Cr.App.1978) (Dally, J., dissenting), and the acquiescing accused is guaranteed that his ultimate sentences will run concurrently. Even so, the value of what benefits may be derived from the joinder procedure are to be assayed by the respective parties in their own lights.

It does not follow, however, that in agreeing the repitition of alleged felonious conduct may constitute a "criminal episode," an accused relinquishes ordinary and regular due process protections of a fair and impartial trial in a properly consolidated proceeding. So, we come to the question of procedural propriety of the written response implicitly made by the trial court to the question posed by the jury: that the jury could consider all evidence before it in deciding guilt-innocence in the Sheldon case.

The law of extraneous offenses is not particularly helpful, for it starts with the proposition that the test for determining admissibility of any type of evidence is whether its probative value outweighs its inflammatory aspects. *Albrecht v. State*, 486 S.W.2d 97, 99 (Tex.Cr.App.1972).

■ Obviously our issue does not implicate the threshold matter of admissibility of testimony showing the Robinson burglary—that was regularly presented to the jury to aid it in assessing punishment for that offense after appellant's plea of guilty.[13] Article 26.14, V.A.C.C.P.; *Fairfield v. State*, 610 S.W.2d 771, 776 (Tex.Cr.App.1981); *Turnipseed v. State*, 609 S.W.2d 798, 801 (Tex.Cr.App.1980). While it might be argued that the Robinson case should not have been developed until after a verdict in the Sheldon case, appellant did not take that position at any time during the trial.

■ Fundamental is the concept that an accused is entitled to a trial on the accusation against him and while that is being done he should not also be tried for some collateral crime or for being a criminal generally. *Rubio v. State*, 607 S.W.2d 498, 499 (Tex.Cr.App.1980). The notion at work in consolidated prosecutions cuts across that concept for purposes of *admitting* evidence, but nothing in the statutes implementing the idea suggests that traditional constraints on the factfinder in *using* evidence before it have been relaxed simply because prosecutions are consolidated. Though the object of Chapter 3 is to dispose of all related offenses in a single trial, it did not abolish due process rules.

■ In this matter of first impression we find that the limitless response of the trial court permitted the jury to appropriate whatever evidence from the Robinson case jurors might deem relevant, and thereby did not adequately perform an essential function of the charge—that it "should affirmatively lead and dispel confusion," *Williams v. State*, 547 S.W.2d 18, 20 (Tex.Cr. App.1977).

The jury had been instructed by the trial court to return a verdict of guilty in the

12. However, the "better practice" is that separate sentences be prepared and filed. *Durham v. State*, 557 S.W.2d 526, 528 (Tex.Cr.App. 1977). See also *Jordan v. State*, 552 S.W.2d 478, 479 (Tex.Cr.App.1977).

13. Along with the charge to the jury in the Sheldon case, the court also instructed the jury to return a verdict of guilty in the Robinson case. In all material respects the definitions, instructions et cetera body of the two charges are the same; indeed, they appear to be duplicate copies. When an accused has pleaded guilty before a jury that is to fix punishment, we do not approve of submitting a charge that incorporates all aspects of the law and applies that law to the facts of the other joined case in which the accused entered a plea of not guilty. Compare Morrison & Blackwell, op. cit., supra, § 80.06, 8 Texas Practice 138; McClung, op. cit., supra, 237. The probability of confusion may be obviated by separate charges, each fashioned for its particular function.

Robinson case. At that stage, then, there was nothing for jurors, as the exclusive judges, to deliberate about in that case. Yet the question raised in their note to the court reveals an uncertainty of the consequence of the repeated concession of Ms. Sheldon that appellant was in her home with her permission, which his attorney had driven hard to the jury in argument.[14] The answer allowed the jury to consider such facts of the Robinson burglary that might dispel its uncertainty. The risk that a jury appropriated testimony in one case to decide another, because the response of a trial court led it to believe it was authorized to do so, is too high for this Court to countenance.

■■■■ Accordingly, we hold that when an accused is prosecuted in a single criminal action for two or more offenses arising out of the same criminal episode, evidence properly admitted as proof of one offense is not ipso facto available for consideration by the factfinder with respect to another offense in issue, and may not be used by the jury as proof of an element of the other offense without appropriate instructions limiting consideration of such evidence for its proper purpose.[15]

■■ Nevertheless, in the instant case, though improperly instructed we do not know from the record that the jury *did* use evidence of the Robinson burglary as proof going to an element of the offense in the Sheldon case. The motion for new trial presented by appellant complains that "the

evidence was at variance with the indictment," which he explained meant the testimony showed that appellant entered the Sheldon residence with her permission. But there is nothing in the record to show that the jury found otherwise on the strength of evidence in the Robinson case. From aught that appears the jury did decide each case on its own merits, as appellant asked it be told to do, and we are not permitted to conjecture contrariwise. The first ground of error is overruled.

On the afternoon of October 18, deliberations by the jury during the punishment phase seemed to be done when it returned to the courtroom with verdict forms. However, while the judge examined what was presented to him, he remarked that "it appears that the Jury has reached a verdict in this Cause No. 31923–34 but has not reached a verdict in 31936–34," stated that "the verdict is not at this point complete" and pronounced it the obligation of the court "to return the Charge and verdict forms to the Jury so that they might continue with their deliberations." That done, the jury was excused until the following morning; then it became apparent that jurors were facing another problem.

This time the note from the jury asked, "Will the 2 different sentences be served separately or at the same time?" Again appellant objected to the proposed answer: "[W]e would except to . . . the fact that the two sentences run concurrently. We would urge that the Jury is not to speculate on this." Acknowledging it, the trial court

---

14. "And so I submit to you that when he entered that home, he entered with the effective consent of Madeline Sheldon, and he did so not under fraud or anything else. He just went in to use the telephone." The prosecutor rejoined with "but if that's true . . . I ask you to think of the case of Diane Robinson for just a minute. Interesting similarity. In one case we go up in pretense of using the phone and lure our way in the house, and in the other we go up and ask if somebody lives here or not. That person isn't naive enough, isn't trusting enough so we simply smash our way in." There was no objection to that rejoinder.

15. The limiting instruction is akin to the one that should be given regarding extraneous transactions. See *Kirkpatrick v. State*, 515 S.W.2d 289, 294 (Tex.Cr.App.1974) (Roberts, J., dissenting), and Morrison & Blackwell, op. cit., supra, § 80.01, 8 Texas Practice 116 and 1982 Pocket Part at 27–28; § 80.05, 8 Texas Practice 137 and 1982 Pocket Part at 32–33; see also McClung, op. cit., supra, at 295. However, since evidence going to a joined offense is necessarily before the jury, it is not a true "extraneous" offense, and care must be taken to inform the jury that its use of such evidence is limited only with respect to another offense in issue.

overruled the exception and submitted the following answer:

"Ladies and Gentlemen: 2 sentences run concurrently at the same time."

 In a ground of error common to both causes, appellant contends that the matter of sentencing is for the trial court alone and "it is not for the jury to speculate." Adverse to his contention and squarely on point is the decision of a Court Panel in *Haliburton v. State*, 578 S.W.2d 729 (Tex.Cr.App.1979), so the ground of error must be and is overruled.[16]

The judgments of conviction are affirmed.

TOM G. DAVIS, J., concurs in result.

---

**16.** The holding in *Haliburton v. State*, supra, is the product of two Judges, with which the third did not agree, and was not exposed to review by the Court En Banc. As indicated in *Baehr v. State*, 615 S.W.2d 713, 716 n. 6 (Tex.Cr.App. 1981) the dogma laid down by the *Haliburton* majority is not acceptable rationale to the writer herein. Section 3.03 mandates that "sentence for each offense ... shall be pronounced." Only judges pronounce sentences. The section adds, "Such sentences shall run concurrently." Only judges cause sentences to run concurrently. The duration of confinement following its assessment of punishment is not a legitimate concern of a jury. *O'Bryan v. State*, 591 S.W.2d 464, 476, 478 (Tex.Cr.App.1979). The question posed by the jury in the case at bar indicates that it was "nibbling at the forbidden fruit" and, in my judgment, called for the same response given by the trial court in *Banks v. State*, 503 S.W.2d 582, 586 (Tex.Cr.App. 1974). *Haliburton* should be reexamined by the Court En Banc.