MARY'S OPINION HEADING 






                                                                                    NO. 12-03-00266-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
EUGENE TYSON ACKER,                               §                 APPEAL FROM THE 114TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            A jury found Appellant guilty of burglary of a habitation and assessed his punishment at
imprisonment for three years and a $5,000 fine. Appellant contends that the State failed to establish
that he entered the complainant’s house without her effective consent and that the trial court erred
in admitting evidence of extraneous offenses. We affirm.
 
Background
            Verma Lou Eubanks, the complainant, lived on Neches Parkway in Smith County. She was
eighty-two years of age at the time of the crime. On the afternoon of January 28, 2000, two young
men knocked on her door. They said they wanted to check her house for roof leaks. She told them
she did not have any leaks. One of the two ran around to the end of the trailer and said, “Boy, you
got a lot of leaks around here.” But Eubanks still insisted that she did not have any leaks. The young
men persisted in saying she did. Then she told them she did not have any money to fix leaks if she
did have them. She turned and went back in the house, and although she had not invited them inside,
they “just kind of followed in behind [her].” She did not give them permission to enter, but she
“didn’t offer to run them off or nothing, because I had done told them I didn’t have no leaks.”
            Once inside, the young men went through the house claiming to have found leaks. Appellant
went to the back bedroom where he said there were leaks. Eubanks started down the hall toward the
bedroom, but remembered that her purse was still in the living room where she had left the man she
referred to as Cooper. When she got back to the living room, Cooper was on his hands and knees
going through her purse. Eubanks hit Cooper between the shoulder blades with her fist. She then
grabbed a shotgun and pointed it at Cooper’s face. Cooper ran out the door. When Appellant came
back in the living room, Eubanks pointed the shotgun at him. Appellant fled immediately, but
retrieved Cooper’s cell phone as he left the house. 
            The men left in a red truck, running a stop sign in their rush to get away. After they were
gone, Eubanks discovered that two twenty-dollar bills, two fives, three ones, four silver dollars, five
quarters, and some old coins were missing from her purse in the living room together with her
driver’s license, medicare card, social security card, and birth certificate. Eubanks believed that
Appellant had gone through two of her purses in the back bedroom closet because their contents had
been disarranged.
            Eubanks identified Appellant in two separate photo lineups as one of the two young men who
had entered her house on the pretext of looking for roof leaks and had stolen her money and
identification.
            Appellant denied that he was in Smith County on the date of the offense.
 
Without Effective Consent
            In his first issue, Appellant contends that there is legally and factually insufficient evidence
to show that he entered complainant’s house without her effective consent.
Standard of Review and Applicable Law
            In evaluating the legal sufficiency of the evidence, the reviewing court must view the
evidence in the light most favorable to the verdict to determine whether any rational trier of fact
could have found all of the essential elements of the charged offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Whitaker
v. State, 977 S.W.2d 595, 598 (Tex. Crim. App. 1998). In conducting a factual sufficiency review,
the appellate court must sustain the verdict unless a neutral review of all the evidence, both for and
against the challenged finding, demonstrates that the proof of guilt is so obviously weak as to
undermine confidence in the jury determination, or the proof of guilt, although adequate if
considered alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000).
            Burglary is defined as follows:
 
A person commits an offense if, without the effective consent of the owner, the person:
 
(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with
intent to commit a felony, theft, or an assault; or
 
(2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation;
or
 
(3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.
 
Tex. Pen. Code Ann. § 30.02 (Vernon 2003). Appellant was charged under subsections (1) and (3). 
Consent is not effective if it is
              a.           induced by force, threat, or fraud;
 
              b.           given by a person the actor knows is not legally authorized to act for the owner;
 
              c.           given by a person who by reason of youth, mental disease or defect, or intoxication
is known by the actor to be unable to make reasonable decisions; or
 
              d.           given solely to detect the commission of an offense.
 
Tex. Pen. Code Ann. § 1.07(19) (Vernon 2003). 
Analysis
            In her testimony, Eubanks insisted that she did not invite the young men into her house, but
that they just followed her in. Appellant lays particular stress on what happened next. According
to Eubanks’s testimony, after they followed her inside, Eubanks did not tell them to leave. Once
they were inside, she “didn’t say nothing. The front bedroom was there. The door was fastened, so
I unlatched that door, and they went in there. And they began to holler, ‘You’ve got leaks in here,
you’ve got leaks in here.’ I said, ‘No, I ain’t got no leaks in there.’”
            The State presented John Gammon as a rebuttal witness. Gammon was eighty-seven years
old at the time of trial. He testified that Appellant was one of a group of three young men who had
come to his home about a week before the instant offense. One of the men told Gammon that his
father had re-roofed Gammon’s house, that any repairs were under warranty, and that the three of
them would make the repairs. Gammon had not called anyone to come to his house, and he told
them that there was nothing wrong with his roof. The two individuals who had come inside with
him said they would check the roof. Gammon remained inside the house. Twenty minutes later they
returned demanding $528 for the work they said they had done. Gammon offered them twenty-five
dollars which they refused. Gammon told the men to leave. A later inspection of Gammon’s roof
revealed that almost nothing had been done to the roof. 
            In summary, the evidence shows that Eubanks was eighty-two years old when Appellant and
Cooper came to her house. Without any invitation to come inside, but with a brazen assurance
bordering on coercion, they used the same pretext to gain entry into Eubanks’s house where they
immediately exploited the opportunity to attempt to commit theft and to commit theft. Gammon was
eighty-five years of age when approached by Appellant and his companions. After initially assuring
Gammon that they were there to repair leaks covered under warranty, they came down from his roof
within twenty minutes with a fraudulent bill for $528. 
            In Gordon v. State, the defendant gained entry into a home on the pretense that he needed
to use the telephone. Once inside, he announced, “I’m going to take your stereo.” He then
disconnected the stereo and ran out the door. At trial, Gordon moved for a directed verdict of not
guilty on the ground that the victim had given him permission to enter her residence. The court of
criminal appeals held that the trial court did not err in denying the motion because the evidence
showed that the defendant had secured entry under the pretense of using the phone. Therefore, the
resident’s consent was not effective because it was procured by fraud. Gordon v. State, 633 S.W.2d
872, 875 (Tex. Crim. App. 1982).
            Similarly, in the present case, the evidence is sufficient to support the inference that
Appellant and his confederates had concocted a fraudulent plan to gain access to the homes of
elderly persons under the pretext of looking for roof leaks. The trial court instructed the jury that
consent is not effective if obtained by force, threats, or fraud. The jury found that Appellant entered
the residence without Eubanks’s effective consent.
            Appellant stresses that despite Eubanks’s insistence that she gave the men no permission to
enter the house, she did unlatch the door to the bedroom thereby giving them entrance to it. 
Although there is evidence that Eubanks impliedly consented to their entry into her home, there is
sufficient other evidence reasonably supporting the jury’s conclusion that such apparent consent was
not effective consent because procured by fraud. We conclude that the evidence, measured against
the appropriate standards of review, is both legally and factually sufficient to support the verdict. 
Appellant’s first issue is overruled.
 
Extraneous Offenses
            In his second issue, Appellant complains that “the trial court erred in admitting into evidence
two extraneous offenses that were not similar to the conduct alleged to have been committed by
Appellant for which he was on trial in the instant case.” During the State’s case in chief and over
Appellant’s objection, the trial court allowed Richland Hills Police Officer Chris Cryer to testify that
he responded to a call at a residence on February 5, 2003, where he encountered Appellant and
Cooper in a red pickup. After the defense rested, the State called Gammon who testified to
Appellant’s attempt to get him to pay $528 for bogus roof repairs.
            Appellant objected that the testimony of Cryer and Gammon about extraneous bad acts was
not relevant, or alternatively, relevant only to show character conformity. Finally, he objected that
even if their testimony was admissible for some other purpose, the probative value of their testimony
was substantially outweighed by the danger of unfair prejudice.
Applicable Law
            Even if relevant, evidence of the defendant’s crimes or other bad acts is not admissible to
prove the defendant’s character in order to show that he acted “in conformity therewith.” Tex. R.
Evid. 404(b); Montgomery v. State, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990). Evidence of
extraneous bad acts “may, however, be admissible for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .” 
Tex. R. Evid. 404(b). Evidence relevant to some legitimate non-character-related purpose may still
be excluded if its probative value is substantially outweighed by the danger of unfair prejudice on
the other reasons set out in Rule 403. Tex. R. Evid. 403; Montgomery, 810 S.W.2d at 389. If an
objection is leveled against the evidence on this basis, the trial court must determine whether the
danger of undue prejudice outweighs the probative value of the evidence. Id. The trial judge’s
determination of relevancy under Rule 404(b) as well as the result of the trial judge’s weighing of
probative value versus the danger of unfair prejudice are reviewed under an abuse of discretion
standard. Id. at 391-92. 
            “The traditional rule regarding the admission of [extraneous offense] evidence for the
purpose of showing identity is that the extraneous offense must be so similar to the offense charged
that the accused acts are marked as his handiwork, that is, his signature must be apparent from a
comparison of circumstances in both cases.” Reyes v. State, 69 S.W.3d 725, 738 (Tex. App.–Corpus
Christi 2002, pet. ref’d).
Analysis
            In its charge, the trial court instructed the jury that it could only consider extraneous offense
evidence in determining “absence of mistake, or the identity or plan of the defendant.”
            Appellant argues that Cryer’s testimony came before the issue of identity was before the jury. 
Therefore, even if relevant on the identity issue, its premature admission was error.
            Officer Cryer’s brief testimony did not describe an extraneous offense. Although not the
basis of a complaint on appeal, Officer Cryer’s partner, Sergeant Chris Bruton, had already testified
to the same facts elicited from Cryer. Moreover, on cross-examination, Appellant’s counsel
attempted to discredit Eubanks’s identification of Appellant. When the State’s only identifying
witness is impeached during cross-examination, identity becomes an issue and extraneous offense
evidence becomes admissible unless its probative value is substantially outweighed by its potential
for unfair prejudice. See Siqueiros v. State, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985).
            Gammon’s testimony came during the State’s rebuttal evidence after Appellant and other
defense witnesses had testified that Appellant was elsewhere when the crime was committed. With
Appellant’s alibi defense before the jury, identity was an issue, and extraneous offense admissible
to prove identity provided that the extraneous offense was so similar to the charged offense as to be
marked as the accused’s handiwork. See Bishop v. State, 869 S.W.2d 342, 346 (Tex. Crim. App.
1993); Reyes, 69 S.W.3d at 738. In both the instant case and the incident described by Gammon,
Appellant (1) within a one-week period, (2) appeared with at least one other male, (3) in a truck, (4)
in daylight hours (noon and 3 p.m.), (5) at an elderly person’s home (both victims were over 80),(6)
who lived alone, (7) allegedly to make roof repairs, (8) when the person had not asked for any
repairs, (9) the person said no repairs were needed, (10) yet Appellant continued insisting that repairs
were needed, and (11) Appellant did not leave until ordered to do so by the victims. 
            In this case, the charged offense and extraneous offense were sufficiently similar. Further,
the court properly instructed the jury to consider such testimony only in “determining the absence
of mistake, or the identity or plan” of Appellant. Nor can we disagree with the trial court’s
assessment that the probative value of the extraneous offense evidence was not substantially
outweighed by its prejudicial potential. Appellant seriously contested the ultimate issue to which
the extraneous offense evidence was relevant. Apart from Eubanks’s testimony, the State had no
other evidence showing identity or plan. The evidence was not of such a nature that it would distract
the jury from the charged offense or suggest to them they should convict on a moral or emotional
basis rather than on a reasonable response to the relevant evidence. The trial court did not err in
admitting the challenged evidence. Appellant’s second issue is overruled.
 
Disposition
            The judgment of the trial court is affirmed.
 
                                                                                                    BILL BASS 
                                                                                                             Justice



Opinion delivered July 14, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice,
Twelfth Court of Appeals, Tyler, sitting by assignment.
.



(DO NOT PUBLISH)