Opinion filed February 16, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed February 16, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                    __________

 

                                                       
    No. 11-04-00287-CR 

                                               
No. 11-04-00288-CR

                                                    __________

 

                              WILLIE CURTIS MAYFIELD, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 29th District Court

 

                                                      Palo
Pinto County, Texas

 

                                       Trial
Court Cause Nos. 12,348 and 12,349

 



 

                                                                   O
P I N I O N

 








The jury convicted Willie Curtis Mayfield of
killing Emma London[1]
and Francis P. Hodges[2]
while burglarizing, or attempting to burglarize, their home.  The State elected not to seek the death
penalty; therefore, the trial court sentenced appellant to life in prison in
each cause.  Appellant challenges his
convictions, alleging the evidence is legally insufficient to support a finding
that he entered the victims=
house without their consent and, therefore, is legally insufficient to
establish burglary.  We find no error and
affirm appellant=s
convictions.

                                                      Issues
and Standard of Review

Appellant challenges his convictions with a single
issue, contending the trial court abused its discretion when it denied his
Motion for Judgment Non Obstante Veredicto and his Motion for New Trial because
the evidence was legally insufficient to establish beyond a reasonable doubt
the nonconsensual entrance necessary to prove the underlying offense of
burglary.

It is unnecessary for appellant to establish an
abuse of discretion.  Appellant was
convicted by a jury.  The trial court
made no findings of fact.  Therefore, we
do not afford deference to the trial court=s
decision to deny appellant=s
post-trial motions.  Instead, we conduct
an independent review of the evidence to determine if the jury=s decision was based upon legally
sufficient evidence.

Our review is guided by well-settled
standards.  We review the evidence in the
light most favorable to the verdict.  Jackson
v. Virginia, 443 U.S. 307 (1979); Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000).  We consider all
the evidence that sustains the conviction, whether properly or improperly
admitted or whether introduced by the prosecution or the defense.  Conner v. State, 67 S.W.3d 192, 197
(Tex. Crim. App. 2001).  We then
determine if any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt.  Johnson,
23 S.W.3d at 7.

                                                                   The
Evidence

The Police Investigation

Emma London and Francis P. Hodges were sisters who
lived together in Mineral Wells.  London
was eighty years old, and Hodges was seventy-five.  They were brutally beaten and stabbed to
death in their home during the early morning hours of June 30, 1983.








Jerry White was a detective with the Mineral Wells
Police Department in 1983; and he assisted in the investigation.  He testified that the back door was
identified as the killer=s
probable point of entry.  There was no
sign of a forced entry, but the back door was standing open while the front
door was closed and had to be forced open. 
The house had been ransacked. 
Drawers had been opened, and their contents removed.  London=s
and Hodges=s purses
had been spilled.  Clothing was dumped on
the floor.

London=s
and Hodges=s bodies
were found lying on the kitchen floor. 
Both had blunt force trauma wounds to their heads.  The police located three murder weapons at
the scene.  They found a blood-stained
pipe and a paring knife near the front door and a blood-stained cane in the
kitchen. 

The police determined that the crime occurred at
night before the victims had retired to bed. 
Both were wearing nightclothes, but one still had on shoes.  The police learned that London and Hodges
maintained a routine and that it was not unusual for them to stay up late.  Neighbors told the police that London and
Hodges=s T.V.
was still on at 2:30 a.m.  The police
also learned that London and Hodges kept their doors locked and that they let
few people into their home.

The police believed that the killer=s motive was theft and that this was a
burglary gone bad.  Besides the condition
of the house, they found a significant amount of money still at the scene.  The day of the murders, Annette Berkins gave
the police two blood-stained pillowcases that she claimed were given to her by
Kevin Cross; and she told the police that they had possibly come from the crime
scene.  Subsequent events were consistent
with a theft hypothesis.  Bobby Williams
lived next door.  He acted as London and
Hodges=s
caretaker.  The police learned that he
was pawning jewelry and old coins, although they could not prove these items
came from the house.  Adrian Wright lived
across the street with her boyfriend Kevin Cross.  She passed large bills at a grocery store
after the murders.

The initial investigation did not reveal
sufficient information to support an indictment,  but the case was never closed.  In 2001, the district attorney=s office received a letter from an
inmate purporting to provide information on the crime.  The investigation resumed; and Cross, Gerald
Taylor, and Wright were subsequently indicted for two counts of capital murder.  Cross was convicted and received two life
sentences.  Taylor was convicted of
robbery.

Taylor and his sister provided statements after
his conviction.  Then, the police
received a letter from an inmate in the Palo Pinto County Jail.  This additional information led to appellant=s indictment.

 

 








Trial Testimony

Taylor testified that on the night of the murders
he was hanging out with appellant and Cross. 
They were drinking and smoking marihuana.  Appellant told them he had heard London and
Hodges had a lot of money.  Appellant and
Cross went to London and Hodges=s
house between 2 and 3 a.m. to steal their money.  Taylor=s
role was to be the lookout and make sure nobody walked up on them.  When appellant and Cross came out of the
house, they had blood on them.  This
surprised Taylor because he thought that it was going to be a regular burglary
and that the ladies would probably be asleep. 
He did not think anyone was going to get killed.

Wright also testified.  She was under indictment for the murders but
had not yet been tried at the time of appellant=s
trial.  She was living with Cross in
1983.  On the day of the murders, Cross
and appellant came into her house.  Both
had blood on their shirts.  Appellant
told Cross to send Wright to the victims=
house to see if they were dead.  She saw
that both ladies were on the floor not moving.

The jury also heard from an informant, Raymond
Travis Poole.  Poole testified that he
grew up in Mineral Wells, that he had been in and out of trouble all of his
adult life, and that he was serving a life sentence for delivering drugs.  Poole knew Taylor, Wright, Cross, and
appellant.  Poole was in prison at the
time of the murders, but he got out of prison in September of 1983 and returned
to Mineral Wells.  Cross discussed with him
what had happened to London and Hodges. 
Appellant also talked to Poole about the murders and told him what had
happened.  Appellant told Poole that
there was a lot of money in the house and that he and Cross killed the
women.  Appellant told Poole that there
was supposed to be just one of the ladies in the house and that Hodges Awoke up or something.@ 
Appellant told Poole that this surprised him and that things Akind of got out of hand.@ 
Hodges knew who appellant and Cross were.  Appellant told Poole that, after Hodges saw
them, they started beating and stabbing the ladies.  After that, they tore up the house and found
a few thousand dollars.

                                                  Is
the Evidence Legally Sufficient?








The indictments alleged burglary as the underlying
offense.  The State was, therefore,
required to prove that (1) appellant (2) without effective consent of the owner
(3) entered a habitation or building (4) not then open to the public (5) with
the intent to commit a felony, theft, or assault.  Tex.
Pen. Code Ann. '
30.02(a)(1) (Vernon 2003).[3]    Appellant contends the evidence was legally
insufficient to establish beyond a reasonable doubt that he entered London and
Hodges= house
without their consent.  AConsent@
is defined by statute as assent in fact, whether express or apparent.  Tex.
Pen. Code  Ann. '
1.07(a)(11) (Vernon 2003).[4]  Consent is not effective if induced by force,
threat, or fraud.  Tex. Pen. Code Ann. ' 1.07(a)(19)(A) (Vernon 2003).[5]  

Appellant argues that the direct evidence
demonstrates that a robbery and struggle took place but not a burglary because
there was no forced entrance and because no witness provided any testimony that
the entrance was without consent.  The
Penal Code does not require a forced entry, and burglary convictions have been
affirmed in a variety of circumstances without one.[6]  As one court has noted, a Aperson can make an unlawful entry by
walking through an open door when the entry is without the owner=s consent.@  Evans v. State, 677 S.W.2d 814, 818
(Tex. App.CFort
Worth 1984, no writ).  Nor is direct
testimonial evidence required because the State may prove lack of consent to
enter by circumstantial evidence.  Hathorn
v. State, 848 S.W.2d 101, 107 (Tex. Crim. App. 1992).  

Appellant contends that the evidence (such as the
absence of any damage to the back door and the fact that murder weapons came
from inside the house) leads to the rational inference that the victims were up
late watching T.V. and unlocked their back door to allow Williams, accompanied
by others to enter the house.  Appellant
concludes this would support a robbery conviction, which as appellant notes is
what Taylor was convicted of, but not burglary. 
Appellant acknowledges Taylor=s
testimony that he was a lookout; however, he argues that this is insufficient
because a lookout could be used for either burglary or a robbery.  Therefore, use of a lookout  is not indicative of a burglary.








This argument assumes that circumstantial evidence
cannot support a conviction if it supports more than one interpretation and has
been rejected by the Texas Court of Criminal Appeals in Geesa v. State,
820 S.W.2d 154, 161 (Tex. Crim. App. 1991)(it is unnecessary for the State to
show that circumstantial evidence excludes every other reasonable hypothesis
than the guilt of the defendant). 
Consequently, the mere fact that some of the circumstantial evidence
might lead to more than one inference does not mean that it cannot support a
finding of guilt.  Appellant=s briefs ably demonstrate that one can
construe the circumstantial evidence to support more than one conclusion.  The jury=s
role was to resolve conflicting testimony. 
This includes choosing between different theories of the case.  Id. at 159.

None of the participants testified that Williams
was involved.  The jury, therefore, was
not required to infer that he helped appellant and Cross gain entrance into the
house.  Even if the jury determined that
he did participate by word or deed, that did not require the jury to infer
effective consent was present.  The Penal
Code specifically provides that consent is not effective if procured through
fraud.  Section 1.07(a)(19)(A).  Appellant and Cross went to London and Hodges=s house to steal money.  The jury could reasonably conclude that, if
Williams agreed to participate by convincing London and Hodges to open the back
door to let appellant and Cross in, this did not constitute effective consent
on their part.  See Ellis v. State,
726 S.W.2d 39, 40-41 (Tex. Crim. App. 1986)(en banc)(jury could reasonably
infer lack of consent when defendant admitted to another inmate that he had
gone to the decedent=s
apartment to steal money and jewelry); Gordon v. State, 633 S.W.2d 872,
874-75 (Tex. Crim. App. 1982)(effective consent is not present when defendant
gained entrance under pretext of wanting to use the phone).  

If Williams was not involved and if appellant and
Cross talked their way into the house, any consent would not amount to
effective consent unless they gave London or Hodges the real reason for their
visit.  The jury could have determined it
was improbable that appellant and Cross were honest with the victims and that
they were then voluntarily invited into the home. 








The jury had other evidence pointing to a burglary.  Appellant, Cross, and Taylor decided to steal
money from London and Hodges during the early morning hours of June 30,
1983.  Appellant and Cross went to their
house between 2 and 3 a.m. to commit the crime. 
They posted Taylor as a lookout. 
Appellant and Cross took no weapons with them, and there was no evidence
anyone expected trouble.

The jury not only could consider the general
improbability that two older ladies would voluntarily invite visitors into
their home between 2 and 3 a.m. but also had specific information indicating
London and Hodges were unlikely to have done so.  The jury was told that London and Hodges
tended to keep their doors locked and that they normally did not allow people
into their home.  Police pictures showed
that both women were wearing nightclothes and that one was partially
undressed.  Each of these factors could
lead a reasonable juror to conclude appellant and Cross were not voluntarily
invited into the home.

Finally, London and Hodges were apparently
murdered because Hodges recognized appellant and Cross.  No other reason or motive was ever
identified.  Because appellant and Cross
took no weapons with them and did not expect trouble, the jury could reasonably
conclude that they went to the house believing they could get in, steal the
money, and get out without being recognized. 
This is inconsistent with a consensual entry.  

Conclusion

The jury is entitled to draw reasonable inferences
from basic facts to ultimate facts.  McIntosh
v. State, 855 S.W.2d 753, 763 (Tex. App.CDallas
1993, pet. ref=d).  We hold that, when the evidence is considered
in the light most favorable to the verdict, a rational trier of fact could
conclude beyond a reasonable doubt that appellant went into London and Hodges=s home without their effective consent
and that he murdered them while committing or attempting to commit a
burglary.  Appellant=s sole issue is overruled.  

The judgments of the trial court are affirmed.

 

 

RICK STRANGE

JUSTICE

February 16, 2006

Publish.  See Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J., and

McCall,
J., and, Strange, J.











[1]Cause No. 11-04-00288-CR.





[2]Cause No. 11-04-00287-CR.





[3]Section 30.02 has been amended since 1983, but those
amendments did not alter the applicable elements for appellant=s alleged offense.





[4]This definition was applicable in 1983.





[5]This provision was applicable in 1983.





[6]Ellis v. State, 726
S.W.2d 39 (Tex. Crim. App. 1986)(en banc); Gordon v. State, 633 S.W.2d
872 (Tex. Crim. App. 1982); Nelson v. State, 905 S.W.2d 63 (Tex. App.CAmarillo 1995, no writ); and Tatum v. State, 349
S.W.2d 139 (Tex. App.CFort Worth 1983, writ ref=d).