**Hosea PRESCOTT, III, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 59850.**

Court of Criminal Appeals of Texas, Panel No. 3.

Jan. 28, 1981.

Will Gray, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and Ted Wilson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before TOM G. DAVIS, McCORMICK and TEAGUE, JJ.

OPINION

TEAGUE, Judge.

Appeal is taken from from a conviction for burglary of a habitation *with intent to commit the felony of rape*, V.T.C.A. Penal Code, Section 30.02(a)(1), (d)(1). Trial was before the court on a plea of not guilty and punishment was assessed at 35 years' con-

finement in the Texas Department of Corrections.

In appellant's second ground of error, he contends the evidence is insufficient to support the conclusion that he intended to commit the felony of rape.

Sec. 30.02, P.C., provides in part that a person commits the offense of burglary of a habitation if, without the effective consent of the owner, he enters a habitation with intent to commit a felony. Thus, it was incumbent upon the State in this cause to prove that:

(1) The appellant

(2) Without the effective consent of the owner

(3) Enters a habitation

(4) *With intent* to commit the felony of rape.

Sec. 21.02, P.C., provides in part that a person commits the offense of rape if he has sexual intercourse with a female not his wife without the female's consent.

The Indictment, though not a model to follow, alleged in pertinent part the following:

... Hosea Prescott, III, hereinafter referred to as the Defendant, heretofore on or about August 23, 1977, did then and there unlawfully with intent to commit rape entered a habitation owned by D. G. C., hereafter styled the Complainant, without the effective consent of the Complainant . . .

The complainant testified that on the day in question, a Tuesday, while unemployed and living with her mother in an apartment residence, her mother left for work between 7:00 and 7:30 o'clock in the morning. Around 10:00 o'clock a. m., while asleep, wearing only a nightgown, brassiere and panties, the complainant was awakened by a man who then had his hand over her mouth and a knife at her neck. She positively identified appellant as "the man." Immediately upon being aroused, the complainant testified appellant told her not to scream, "that all he wanted was a little piece of ass."

Appellant immediately pulled the complainant's underwear off her person and threw her panties to the floor. In an attempt to appease appellant's lustful actions, the complainant made an attempt to avert appellant raping her or attempting to rape her by offering him $80.00. After being told to "Go get it," which the complainant did and obtained $80.00 from a closet, she then gave appellant the $80.00. However, this did not deter appellant's lustful actions, as after he counted the sum of money, he tried to pull the complainant's nightgown off her. The complainant, realizing that appellant's sole intention at that time was to rape her and realizing she had no recourse in protecting her person from a violent act of aggression, told appellant he was just going to have to kill her whereupon she commenced screaming. At this time, appellant put his hand in her face, pushed her backwards, and then started running out of the apartment with the complainant chasing him into a nearby field near a grocery store, screaming all the while. At this time, several other persons commenced chasing appellant and they eventually caught him and took him to a store manager's courtesy booth inside a grocery store where the complainant subsequently identified appellant, at which time appellant jumped out of the booth and started running again but was apprehended by a Barney Smith. This time, appellant was put in or near a storeroom. The complainant later received her $80.00 back from the police, although it was found in the grocery store. A subsequent examination of the kitchen area of the apartment by the complainant revealed a knife missing similar to the one appellant had when he accosted the complainant while she was sleeping. The complainant testified that during this period of time she was in fear of bodily injury or death.

George Ruiz, a neighbor of the complainant, testified that when coming from the restroom in his apartment his nephew who was then present told him that he had seen

a man open the door to their apartment but apparently, when he saw Mr. Ruiz' nephew, the man said he was in the wrong apartment and left. At this time Ruiz also heard a scream and then observed a male running through the apartment complex toward the grocery store, with the complainant behind him, still screaming. Ruiz did not, apparently, join in the chase but later saw appellant in custody at the grocery store and positively identified appellant as the one he saw running from the apartment complex to the store.

Kenneth Johnson, the assistant manager at Food City, the grocery store mentioned, testified that while on the parking lot putting groceries in his car he heard screams and saw who he later identified as the complainant chasing a male who he identified as the appellant. Johnson then joined in the chase, though suffering from a recent hernia operation, and he and a Sammy Grizzaffi finally captured the appellant, who was then inside an automobile apparently attempting to flee from the scene. Johnson and Grizzaffi then took appellant inside the store to a courtesy booth. When appellant fled from the booth, he was captured by a customer of the store with Johnson and Grizzaffi bringing him back inside the store and putting him in or near an old office, now used as a storeroom, located near the meat department, where they remained on guard until the police arrived.

Danny L. Smith, another neighbor of the complainant, testified that someone tried to open his apartment door that day, causing Mr. Smith to get up from a divan, get dressed and open the front door of his apartment where he saw appellant standing at the bottom of some steps. Realizing there could be many reasons for appellant's presence, Smith "just kind of let it go off," but observed appellant looking around to the left side of the building or in the direction where the complainant lived. Shortly thereafter, Smith heard a scream from the direction where the complainant lived. When Smith saw the complainant, the chase between the complainant and appellant had just terminated. Smith later went inside the Food City grocery store

where he saw appellant whom he positively identified as being the same person who tried to enter his apartment.

Sam Grizzaffi, see supra, also testified. When cleaning the storeroom later in the day, Mr. Grizzaffi found $80.00 and turned it over to the police. The money was found in the immediate vicinity of where appellant was forced to sit the second time he was caught.

■ We reject appellant's contention that the evidence was insufficient to sustain the conclusion that he intended to commit the felony of rape and find not only that the evidence was sufficient but also find that but for the valiant and heroic efforts of the complainant, this could very easily be a more serious cause to review.

Appellant's sole authority for his contention that the evidence is insufficient to support the conclusion that he intended to commit the felony of rape, i. e., due to his actions toward the Ruiz and Smith apartments, together with the inference he took a knife from the silverware drawer in the complainant's apartment, and being unarmed, this showed he was a burglar bent on stealing and not raping, is *Conrad v. State*, 154 Tex.Cr. 624, 230 S.W.2d 225 (1950), which is totally inapposite to the facts in this cause. There, the State introduced into evidence a confession, without removing exculpatory parts, of the accused to prove her case. It was held:

Here, the state, *by the confession*, showed that the intent on the part of the appellant to rape the injured party was formed after he had entered the house. Having introduced and relied upon the confession to make out its case, the state is bound thereby. There is no testimony contradictory of this exculpatory evidence. The state, by using appellant's confession, showed, therefore, that he was not guilty of the offense [burglary with intent to rape] charged.

We subscribe to that statement of the law, but find it is not applicable to this cause due to the facts adduced and presented in this cause and the further fact that no

exculpatory evidence exculpating the appellant from the crime charged was presented or admitted into evidence by the State. See also the cases cited in 12A *Tex.Dig.*, Crim.Law, Key Nos. 781(8), 556; McCormick and Ray, *Evidence*, Sec. 1224; and *Branch's P.C.* Sec. 95. Appellant's ground of error is therefore overruled.

Appellant's second contention is that the evidence is insufficient to prove the entry into the complainant's apartment was without the effective consent of the owner.

Appellant also argues under this ground of error that: "Further, in an apparent effort to bolster its uncontroverted case and increase the punishment, the state introduced evidence that the appellant was acting with the intent to commit the offense of theft, rather than that of rape." We note that when evidence of the Ruiz and Smith entry and attempted entry were offered into evidence, appellant made no objection to same.

Appellant's sole authority of *York v. State*, 566 S.W.2d 936 (Tex.Cr.App.1978) is also inapposite to this cause for there the accused entered a plea of guilty and, to support its proof, the State introduced into evidence a judicial confession of the accused which omitted the phrase "without the effective consent of the owner," a necessary element of the offense charged. Because of such omission, this Court ruled that the evidence offered to support the conviction was insufficient.

Appellant appears to contend that because the complainant was asleep at the time he gained entry into her apartment and residence and at no time did she explicitly and directly testify that such entry was without her consent, the evidence is therefore insufficient to prove all of the elements alleged.

■ *Taylor v. State*, 508 S.W.2d 393 (Tex. Cr.App.1974) is dispositive of appellant's contention and we find the evidence adduced during the trial of this cause sufficient to prove circumstantially if not direct-

ly a want of consent. We hold that proof of lack of consent to entry in a prosecution for burglary with intent to commit rape offense may be by circumstantial evidence the same as any other issue in a criminal case may be proved by circumstantial evidence.

■ This is a sound rule of law especially where the accusation is burglary with intent to rape. It would be the rare burglar, bent on rape, who would not wait until a complainant has retired to bed and gone to sleep before attempting to enter a residence to perpetrate his dastardly deed.[1] To require the State to meet its burden of proof by other than circumstantial evidence would, in many such cases, allow the wrongdoer to escape his day in court. This we decline to do. Furthermore, we do not find it necessary for a complainant to expressly use "the magic words" that she did not give her effective consent or that the accused did not have her effective consent to enter the premises when testifying. The Record in this cause reflects the following question and answer of the complainant:

Q. [Mr. Ted Wilson]: Now if he entered the apartment on that date, would it have been without your effective consent? In other words, had you let him in?

A. [Complainant]: No. I was asleep. We find this testimony, together with other facts of the case of appellant's presence inside the apartment, sufficient to prove that entry into the complainant's apartment was without her effective consent. See also *Hogan v. State*, 529 S.W.2d 515 (Tex.Cr. App.1975). Appellant's first ground of error is therefore overruled.

The judgment is affirmed.

---

1. It would appear that in our present modern society there exists no reason not to apply the usual presumption that one who breaks and enters a habitation in the nighttime does so with the intent to commit theft, if done in the daytime, but we do not decide that issue today.