ACCEPTED
03-14-00676-CR
7998978
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/25/2015 11:26:18 PM
JEFFREY D. KYLE
CLERK

CAUSE NO. 03-14-00676-CR

IN THE COURT OF APPEALS FOR THE
THIRD DISTRICT OF TEXAS
AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/25/2015 11:26:18 PM
JEFFREY D. KYLE
Clerk

ANGELITA RODRIGUEZ PACHECO,
Appellant

V.

THE STATE OF TEXAS,
Appellee

ON APPEAL FROM CAUSE NO. 41988
424th JUDICIAL DISTRICT COURT OF BURNET COUNTY, TEXAS

BRIEF FOR APPELLEE

OFFICE OF THE DISTRICT ATTORNEY
33RD AND 424TH JUDICIAL DISTRICTS
Wiley B. McAfee, District Attorney
P.O. Box 725
Llano, TX 78643
Telephone: 325-247-5755
Facsimile: 325-247-5274

By:  R. Blake Ewing
     Assistant District Attorney
     State Bar No. 24076376
     asstda2@burnetcountytexas.org

     Gary W. Bunyard
     Assistant District Attorney
     State Bar No. 03353500
     g.bunyard@co.llano.tx.us
     ATTORNEYS FOR APPELLEE

November 25, 2015

*ORAL ARGUMENT REQUESTED*

## IDENTITY OF THE PARTIES AND COUNSEL

**Trial Court**
Honorable Dan H. Mills (FORMER)
424th Judicial District
Burnet County Courthouse Annex (North)
1701 E. Polk St., Suite 74
Burnet, TX 78611

**Trial Counsel for State/Appellee**

| | |
|---|---|
| R. Blake Ewing | Richard Crowther |
| State Bar No. 24076376 | State Bar No. 05174200 |

Assistant District Attorneys
P.O. Box 725
Llano, TX 78643
325-247-5755

**Appellate Counsel for State/Appellee**

| | |
|---|---|
| R. Blake Ewing | Gary W. Bunyard |
| State Bar No. 24076376 | State Bar No. 03353500 |

Assistant District Attorneys
P.O. Box 725
Llano, TX 78643
325-247-5755

**Trial Counsel for Appellant**

| | |
|---|---|
| Michael Watson | Michelle Moore |
| State Bar No. 24060804 | State Bar No. 00798294 |

Burnet County Public Defender's Office
1008 N. Water St.
Burnet, TX 78611

**Appellate Counsel for Appellant**
Gary E. Prust
State Bar No. 24056166
Law Offices of Gary E. Prust
1607 Nueces St.
Austin, TX 78701

**Appellant**
Angelita Rodriguez Pacheco
TDCJ# 01962601
SID# 06465028
TDCJ, Hilltop Unit
1500 State School Road
Gatesville, TX 76598-2996

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES.....................................................................................................ii

TABLE OF AUTHORITIES......................................................................................................v

STATEMENT OF THE CASE ...................................................................................................2

STATEMENT ON ORAL ARGUMENT....................................................................................2

EXPLANATION OF CITATION OF RECORDS......................................................................2

REPLY TO ISSUES PRESENTED ...........................................................................................3

STATEMENT OF FACTS ..........................................................................................................3

SUMMARY OF THE ARGUMENTS........................................................................................4

ARGUMENT ON REPLY TO ISSUE NO. 1 ............................................................................7

**The evidence of the lack of effective consent to enter the victims' hotel rooms was sufficient to sustain the jury's guilty verdict for burglary of a habitation.**

ARGUMENT ON REPLY TO ISSUE NO. 2 ............................................................................15

**The jury was properly charged on the meaning of "effective consent," and any error contained in the jury charge did not cause Appellant egregious harm.**

ARGUMENT ON REPLY TO ISSUE NO. 3 ............................................................................22

**The trial court did not abuse its discretion by refusing to permit the testimony of Raul Munoz on the issue of Appellant's eligibility for jury recommended community supervision.**

ARGUMENT ON REPLY TO ISSUE NO. 4 ............................................................................28

**Appellant's Fifth Amendment right against self-incrimination was not violated when she chose to testify in order to establish her eligibility for jury recommended community supervision.**

**PRAYER FOR RELIEF** ................................................................................................. 31

**CERTIFICATE OF WORD COUNT** ......................................................................... 32

**CERTIFICATE OF SERVICE** .................................................................................. 32

# TABLE OF AUTHORITIES

Cases

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985)………..…..……..16, 17, 20, 22

*Birdsong v. State*, 82 S.W.3d 538 (Tex. Crim. App. 2002)……………………………..…..30

*Brumfield v. State*, 445 S.W. 2d 732 (Tex. Crim. App. 1969)……………………………....28

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007) ………..……..……………......7

*Fletcher v. State*, 396 S.W.2d 393 (Tex. Crim. App. 1965)……………..……………….10

*Fuller v. State*, 73 S.W.3d 250 (Tex. Crim. App. 2002)……………………………………11

*Gordon v. State*, 633 S.W.2d 872 (Tex. Crim. App. 1982)………………………,,,….14, 22

*Holder v. State*, 140 Tex. Crim. 55, 143 S.W.2d 613 (Tex. Crim. App. 1940)…….….….28

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007)………..……..……………….7, 8

*Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)......................7

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)…………………………………..8

*Middleton v. State*, 125 S.W.3d 450 (Tex. Crim. App. 2003)……………..…..………..16

*Montgomery v. State,* 810 S.W.2d 372 (Tex. Crim. App. 1990)……...........................22

*Mills v. State*, 722 S.W.2d 411 (Tex. Crim. App. 1986)…………………………….....10

*Nava v. State*, 415 S.W.3d 289 (Tex. Crim. App. 2013)……..…………………………16, 17

*Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005)……………..…………………16

*Osbourn v. State*, 92 S.W.3d 531 (Tex. Crim. App. 2002)…………………….…..…..26

*Potier v. State*, 68 S.W.3d 657 (Tex. Crim. App. 2002)……………………………….27

*Prescott v. State*, 610 S.W.2d 760 (Tex. Crim. App. 1981)……………..…………….13

*Sherlock v. State*, 632 S.W.2d 604 (Tex. Crim. App. 1982)……………….…..………29

*Skaggs v. State*, 56 Tex. Crim. 79, 119 S.W. 106 (Tex. Crim. App. 1909)………...……….10

*Sweeten vs. State*, 693 S.W.2d 454 (Tex. Crim. App. 1985)…………..…………………….29

*Taylor v. State*, 508 S.W.2d 393 (Tex. Crim. App. 1974)……………………………………..13

*Trevino v. State*, 577 S.W.2d 242 (Tex. Crim. App. 1979)……………...…..……..26, 27

*Willover v. State,* 70 S.W.3d 841 (Tex. Crim. App. 2002)…………………………........23

*Winegarner v. State,* 235 S.W.3d 787 (Tex. Crim. App. 2007)…………….....................23

## Statutes

Tex. Code Crim. Proc. Art. 44.12 § 4(e)……………………………………………………….23

Tex. Penal Code Ann. § 1.07(a)(11)…………………………………………………………..9, 20

Tex. Penal Code Ann. § 1.07(a)(19)……………...…………………...…………9, 12, 17

Tex. Penal Code Ann. § 1.07(a)(35)(A)..……………………………………………………..9

Tex. Penal Code Ann. § 30.02(a)(3)…………………………………........................................8

Tex. R. Evid. 602………………………………………………...…………………...23, 25

Tex. R. Evid. 701………………………………………………………...………..…………23, 25

**CAUSE NO. 03-14-00676-CR**

_____

**IN THE COURT OF APPEALS FOR THE**
**THIRD DISTRICT OF TEXAS**
**AUSTIN**

_____

**ANGELITA RODRIGUEZ PACHECO,**
**Appellant**

**V.**

**THE STATE OF TEXAS,**
**Appellee**

_____

**ON APPEAL FROM CAUSE NO. 41988**
**424th JUDICIAL DISTRICT COURT OF BURNET COUNTY, TEXAS**

_____

**BRIEF FOR APPELLEE**

_____

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

**COMES NOW** the Appellee, the State of Texas, and files this brief pursuant to the provisions of the Texas Rules of Appellate Procedure in reply to the brief by the Appellant, and in support thereof would show the Court as follows:

- 1 -

## STATEMENT OF THE CASE

The Appellant's statement of the case is accurate.

## STATEMENT ON ORAL ARGUMENT

The undersigned requests oral argument. While the undersigned believes that the issues raised by Appellant and addressed herein are straightforward and do not present any novel or complex questions on which oral argument would be beneficial to the Court, Appellant has requested oral argument and the undersigned will participate if the Court believes that oral argument will assist the Court in any way.

## EXPLANATION OF CITATION OF RECORDS

The Clerk's Record will be cited by page number as "C.R. _____ [page number]." The Court Reporter's Record will be cited by volume and page number as "R.R. Vol. _____ [volume number], p. _____ [page number]" and, where necessary, "l. _____ [line number]."

## REPLY TO ISSUES PRESENTED

I.      The evidence presented at trial was sufficient to sustain the jury's guilty verdicts on the charges of burglary of a habitation.

II.      There was no error in the trial court's jury charge, and any error now asserted by Appellant would not have resulted in egregious harm.

III.      The trial court did not err when it determined that one of Appellant's witnesses was incompetent to offer testimony on the question of Appellant's eligibility for community supervision and excluded the proffered testimony.

IV.      Appellant was not compelled to testify in violation of her Fifth Amendment right when she chose to testify following the trial court's exclusion of another witness's incompetent testimony.

## STATEMENT OF FACTS

The Appellant's representation of the facts is acceptable.

## SUMMARY OF THE ARGUMENTS

## REPLY TO ISSUE NO. 1

When viewed in the light most favorable to the verdict, the evidence is sufficient to sustain Appellant's convictions for burglary of a habitation because appellant lacked effective consent to enter the hotel rooms in question. The named owners of the rooms gave no express consent for Appellant to enter their rooms for any reason, and any apparent consent to enter was ineffective since it was induced by fraud. Likewise, any consent to enter given by Appellant's coworker Melina Escobar, either as an owner of the rooms for the purposes of the burglary statute or as a person legally authorized to act for the owners, was also ineffective as induced by fraud. A rational juror could have concluded from the evidence that Appellant worked at the hotel with the aim of gaining access to the rooms in order to commit theft, and that she induced Escobar to grant entry to the rooms by fraud, thus rendering any consent to enter ineffective.

## REPLY TO ISSUE NO. 2

Even if it was error to fail to include in the jury charge an instruction that effective consent includes consent by a person legally authorized to act for the owner, Appellant was not harmed since consent induced by fraud is equally ineffective whether granted by an owner or by a person legally

authorized to act for the owner. Furthermore, the evidence and arguments offered by Appellant at trial were not weakened by the omission of the full statutory definition of effective consent. Appellant did not object to the charge, and she cannot demonstrate the actual egregious harm, rather than merely theoretical harm, necessary to require reversal.

Additionally, it was not error to include an instruction that "entry is without the owner's effective consent if it is without the owner's assent in fact." The instruction is an accurate and logical restatement of the law and does not instruct the jury to find an essential element of the offense.

## REPLY TO ISSUE NO. 3

The court did not abuse its discretion in excluding the testimony of Raul Munoz proffered at the punishment phase of trial to attempt to establish Appellant's eligibility for community supervision. Munoz lacked sufficient personal knowledge of Appellant's life and criminal history to rationally support his opinion or inference that Appellant had never been convicted of a felony in any state.

## REPLY TO ISSUE NO. 4

Appellant's Fifth Amendment right against self-incrimination was not violated when she elected to testify at the punishment phase of trial, claiming that she felt impelled to do so by the court's exclusion of Raul Munoz's

testimony relating to Appellant's eligibility for community supervision. The court properly excluded Munoz's testimony, the State has not created any improper or illegal impetus for Appellant to testify, and Appellant did not establish that her eligibility for probation could not have been shown by other competent evidence.

## ARGUMENT ON REPLY TO ISSUE NO. 1

**The evidence of the lack of effective consent to enter the victims' hotel rooms was sufficient to sustain the jury's guilty verdict for burglary of a habitation.**

### Standard of Review

In assessing the legal sufficiency of the evidence to support a criminal conviction, a reviewing court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The reviewing court gives deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. When the record supports conflicting inferences, a reviewing court presumes that the factfinder resolved the conflicts in favor of the prosecution and therefore defers to that determination. *Clayton*, 235 S.W.3d at 778.

In reviewing the sufficiency of the evidence, a court should look at events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act. *Hooper*, 214 S.W.3d at 13. Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* Circumstantial evidence is as probative as direct evidence in establishing guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* On appeal, the same standard of review is used for both circumstantial and direct evidence cases. *Id.*

In a sufficiency review, the essential elements of the offense are those of a hypothetically correct jury charge for the case; one that accurately sets out the law and adequately describes the offense for which the defendant was tried without increasing the State's burden of proof or restricting the State's theories of liability. *Id.* at 14 (citing *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)).

A person commits the offense of burglary of a habitation if, without the effective consent of the owner, the person enters a habitation and commits theft. Tex. Penal Code Ann. § 30.02(a)(3). Consent means assent

in fact, whether express or apparent. Tex. Penal Code Ann. § 1.07(a)(11). Effective consent includes consent by a person legally authorized to act for the owner; consent is not effective if induced by force, threat, or fraud. Tex. Penal Code Ann. § 1.07(a)(19). An owner means a person who has title to the property, possession of the property, or a greater right to possession of the property than the actor. Tex. Penal Code Ann. § 1.07(a)(35)(A).

## Analysis

Appellant claims that the evidence was insufficient to prove that she entered the hotel rooms in question without the effective consent of the owners. The indictment alleged the owner of the habitation in each count to be Frank Alderete and Luis Arguello, respectively. Mr. Alderete testified that he had not given Appellant consent to enter his room for any purpose, he did not wish for any member of the hotel staff to enter his room, he would not have consented to Appellant's entry for the purposes of cleaning his room had he been asked, and he would not have consented to entry if he had known that Appellant would take his property from his room. R.R. Vol. 3, pp. 27-29. Mr. Arguello similarly testified that he had not given Appellant consent to enter his room for any purpose and he likewise would not have consented to her entry if he had known that Appellant would take his property from his room. R.R. Vol. 4, pp. 19-21.

While this testimony makes clear that Appellant had no express consent to enter the rooms in question, Appellant's trial counsel argued that Appellant had apparent consent to enter by virtue of her position as an employee of the hotel. But, as discussed *infra*, any apparent consent to enter by virtue of Appellant's position was rendered ineffective since it was acquired by fraud. *See Mills v. State*, 722 S.W.2d 411, 415 (Tex. Crim. App. 1986) ("[D]eception operates to render otherwise apparent consent 'ineffective.' That the accused consciously acted to perpetrate the deception in order to obtain that consent only serves to prove his knowledge that it was, in fact, ineffective.") (internal citation omitted).

Having proved that Appellant entered the rooms without the effective consent of the owners and occupants named in the indictment (i.e. Alderete and Arguello), the State was not required to allege or prove lack of consent of any other person claimed to have authority to give consent to enter. *Fletcher v. State*, 396 S.W.2d 393, 395-396 (Tex. Crim. App. 1965). It is incumbent on the defendant to raise, as a matter of defense, the issue of consent of any other party claimed to have authority to consent to the entry. *See id.* (citing *Skaggs v. State*, 56 Tex. Crim. 79, 119 S.W. 106 (Tex. Crim. App. 1909).

Appellant now argues that Melina Escobar, Appellant's coworker and trainer, was an owner for the purposes of the burglary statute and that the State's case must fail without evidence of the lack of effective consent from Escobar. Appellant's trial counsel advanced no such argument, instead choosing to argue that Appellant had apparent consent from Mr. Alderete and Mr. Arguello to enter their rooms for the purpose of cleaning and that Melina Escobar was more likely than Appellant to have been the person stealing property from the rooms. *See* R.R. Vol. 4, pp. 63-69. Neither did Appellant's trial counsel object to the court's jury charge identifying Mr. Alderete and Mr. Arguello as the "owners" of the rooms for the purposes of determining whether Appellant had effective consent to enter. R.R. Vol. 4, pp. 40-53. Nevertheless, since the actual name of the owner is not a statutory element of the offense of burglary and is not included in the hypothetically correct jury charge, we will address Appellant's sufficiency argument as it relates to Ms. Escobar's consent for Appellant to enter the rooms in question. *See Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002).

Melina Escobar did testify that, in her role as Appellant's coworker and trainer (though not her supervisor), she had opened the doors to the hotel rooms and allowed Appellant to enter for the purpose of cleaning the rooms

on July 31, 2013.  R.R. Vol. 3, p. 40.  Assuming, *arguendo*, that Ms. Escobar is an owner of the hotel rooms in question for the purposes of the burglary statute by virtue of the fact that she was entrusted by her employer with a master key and was given authority to enter and clean rooms, her testimony, along with reasonable inferences therefrom, provides sufficient evidence to support the conclusion that any consent to enter granted by Escobar was not effective since it was induced by Appellant's fraud.  *See* Tex. Penal Code Ann. § 1.07(a)(19).

Escobar testified that the owner of the hotel had asked her to train appellant to clean the hotel rooms.  R.R. Vol. 3, p. 38-39.  Escobar had never spoken with Appellant before they began working together at the hotel, and they were not personally close while working together.  R.R. Vol. 3, p. 39.  Appellant, who lived at the hotel with her boyfriend, often took breaks and was not a hard worker.  *Id*. at 39, 41, 53.  Escobar testified that people who lived at the hotel sometimes worked as housekeepers when they could not afford to pay for their own rooms.  *Id*. at 39-40.  Before cleaning each room, Escobar used a master key to open each door for Appellant.  *Id*. at 40.  For the first two days that they worked together, Escobar never left Appellant alone in a room; Escobar would stay in each room while she and Appellant cleaned together.  *Id*. at 41, 57.  Nothing was reported stolen from any rooms

during these first two days.  *Id*. at 59.  On the third day that Escobar was training Appellant they did not clean rooms together; instead, Escobar would open each door for Appellant and then go clean a different room.  *Id*. at 40-41, 54, 58.  It was on this day that property was reported missing from the victims' rooms.  *Id*. at 41.

While Escobar did not directly testify that Appellant had fraudulently induced her to grant access to the hotel rooms, no such testimony is required.  Lack of effective consent in a prosecution for burglary may be proved by circumstantial evidence, just as any other issue in a criminal case may be proved by circumstantial evidence.  *Taylor v. State*, 508 S.W.2d 393, 397 (Tex. Crim. App. 1974).  No "magic words" are necessary from a testifying witness to prove that consent was not given or that an accused did not have effective consent to enter the premises.  *Prescott v. State*, 610 S.W.2d 760, 763 (Tex. Crim. App. 1981).

Considering the events occurring before, during, and after the commission of the offense, the cumulative force of all the incriminating circumstances could have lead a rational juror to conclude that Appellant began working at the Hill Country Inn with a design to gain access to the rooms and steal from the occupants.  Thus a rational juror could have found that any consent, whether express or apparent, given by Escobar for

Appellant to enter the rooms was not effective since it was induced by Appellant's fraud.

This is precisely what the State argued in closing:

> [Appellant] wasn't going in to clean rooms. She was going in to steal things. And we know she was going in to steal things. She wasn't a housekeeper who went into a room and made a really bad decision….We know that's not what she was doing because she did it more than once. She did it multiple times. She [had] a plan, a scheme, a design. She wasn't using a crowbar or a lock-picking tool to open up these rooms. She was using her uniform, a little push card, and she was using her coworker to get her in that room. Those were her burglary tools. That's how she got in. That's how she planned to get in. She worked this job for three days. Two of those days her coworker was standing right beside her and during that time she didn't take anything. As soon […] as she had an opportunity to be on her own in that room she began going from room to room grabbing up property that didn't belong to her. Those are the actions of a burglar. That's someone who has a plan to use a tool to get into a room without people's consent and steal from them. That describes a burglar.
> […] Consent is not effective if it's obtained by fraud. She was being fraudulent. She was holding herself out as something that she wasn't. The defendant is not a housekeeper who committed a theft. She's a burglar, a thief, who used her position to commit her crimes.

R.R. Vol. 4, pp. 60-61.

The facts in this case are analogous to the facts in *Gordon v. State*, 633 S.W.2d 872 (Tex. Crim. App. 1982). In *Gordon*, the defendant gained entry to the victim's home by asking permission to use her telephone. The victim granted consent and the defendant entered the victim's residence and

went through the motions of placing a telephone call before stealing an item on his way out. The State argued that the defendant had gained entry to the house "under pretense," and the Court was satisfied that any rational trier of fact could have found the essential element of entry without the owner's effective consent beyond a reasonable doubt.

In the same way, any rational juror in the case at bar could have found from Escobar's testimony that she granted Appellant access to Alderete's and Arguello's rooms because Appellant had misrepresented her motive for entering those rooms. The State argued precisely this theory and cited evidence to support it. In reaching their verdict, the jury implicitly found that any consent given to enter the rooms, whether express or apparent, was not effective. Giving deference to the jury's responsibility to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts, the evidence is sufficient to support that verdict.

## ARGUMENT ON REPLY TO ISSUE NO. 2

A. **The jury was properly charged on the meaning of "effective consent," and any error contained in the jury charge did not cause Appellant egregious harm.**

### Standard of Review

When analyzing any jury charge issue, the reviewing court first determines whether error exists. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). Then, if error is found, the appellate court should analyze that error for harm. *Id.* Error preservation does not become an issue until harm is assessed because the degree of harm necessary for reversal depends upon whether the error was preserved. *Id.*

Jury charge error requires reversal when a defendant has properly objected to the charge and the court finds some harm to his rights. *Ngo v. State*, 175 S.W.3d 738, 742 (Tex. Crim. App. 2005). If a defendant did not object to the instructions at issue, they are not entitled to reversal unless the record shows that they suffered "egregious harm." *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) (*citing Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). The "egregious harm" standard is a difficult one to meet and requires a showing that the defendant was deprived of a fair and impartial trial. *Nava v. State*, 415 S.W.3d at 298. The record must disclose "actual rather than theoretical harm," and the error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. *Id.* In determining whether egregious harm is shown, a reviewing court looks at the entire jury charge, the state of the evidence (including contested issues and the weight of

probative evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole.  *Id.*

## Analysis

Appellant's counsel affirmatively stated that she had no objection to the court's charge in this cause.  R.R. Vol. 3, p. 43.  Thus a reviewing court should apply the egregious harm standard set forth in *Almanza* in determining whether reversible error exists.  *See Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985).

Appellant first argues that the jury charge fails to adequately define effective consent to include "consent by a person legally authorized to act for the owner." *See* Tex. Penal Code Ann. § 1.07(a)(19).  Appellant claims that the exclusion of this portion of the statutory definition of effective consent was error since it was "central to the defensive theory of the case."  While the issue of effective consent was central to the determination of the case, the evidence and argument presented by Appellant would not have been strengthened by an instruction that effective consent includes consent by a person legally authorized to act for the owner.  So even if the court erred by excluding the full statutory definition of "effective consent" from the jury charge, Appellant is unable to show the sort of egregious harm required under *Almanza* to compel reversal.

Appellant advanced several theories at trial. First, that Mr. Alderete and Mr. Arguello gave apparent consent for Appellant to enter their rooms because neither of them affirmatively communicated that they did not want any housekeeping services and neither posted any sort of notice on their door for hotel staff to stay out. R.R. Vol. 4, pp. 63-64. Second, Appellant argued that she did not steal Mr. Alderete's or Mr. Arguello's property. She introduced evidence through the testimony of Raul Munoz that she had received the phone reportedly seen in her possession on the day of the incident from a friend by the name of Benjamin Tarbet, and argued that Mr. Alderete's phone was more likely stolen by Melina Escobar. *Id.* at 27, 64-65. She also introduced evidence through Munoz that Mr. Arguello's iPad was found on the ground outside his room by Munoz (Appellant's common law husband and a convicted burglar), picked up by Appellant, and stored under the mattress in her room for safekeeping. *Id.* at 27-34.

Appellant did not urge the argument that she had received consent to enter the hotel room from a person legally authorized to act for the owner, only that she had the apparent consent of Alderete and Arguello, the alleged owners themselves. In fact, Appellant's main argument with respect to Melina Escobar was that Escobar was more likely than Appellant to be the person who committed the thefts, since she possessed a key to the hotel

rooms while Appellant did not. Furthermore, even if appellant had argued at trial that she was given consent to enter the rooms in question by Melina Escobar and that Escobar was a person legally authorized to act for the owner, the evidence that appellant induced Ms. Escobar's consent by fraud would apply with precisely the same force and the jury could have found any such consent ineffective as induced by fraud.

The State's theory of the case was that Mr. Alderete and Mr. Arguello never consented to Appellant's entry into their rooms and that any apparent consent to enter given by Melina Escobar was ineffective as induced by fraud. This argument would have equal force whether Escobar was regarded as an owner for the purposes of the burglary statute or a person legally authorized to act for the owner. While the State did briefly argue in closing that Ms. Escobar could not consent to Appellant's entry because she was not an owner and "could not give consent for the owner if the owner didn't want to give it," the bulk of the State's argument was dedicated to the theory that any consent to enter was induced by Appellant's fraud and thus ineffective. R.R. Vol. 4, pp. 59-61. In light of the evidence showing that Appellant gained consent to enter the victims' rooms by pretense, the argument of State's counsel that Appellant's fraudulent scheme rendered any consent to enter ineffective regardless of the identity of the party granting consent, and

the argument of Appellant's counsel urging that Melina Escobar was the potential culprit rather than a person legally authorized to act for the owner, it is difficult to see how the exclusion of the full statutory definition of effective consent could have theoretically harmed Appellant, much less caused actual egregious harm amounting to the deprivation of a fair and impartial trial as required by *Almanza* and its progeny.

Appellant next argues that it was error for the court to include in the jury charge the statement that "entry is without the owner's effective consent if it is without the owner's assent in fact," claiming that the instruction invades the province of the jury, instructs them to find an essential element of the offense, and misstates the law.  Appellant is incorrect.

The Texas Penal Code defines consent as follows: "'Consent' means assent in fact, whether express or apparent."  Tex. Penal Code Ann. § 1.07(a)(11).  This definition equates "consent" with "assent in fact." Therefore, the court's instruction that "entry is without the owner's effective consent if it is without the owner's assent in fact" is functionally the same as an instruction saying "entry is without the owner's effective consent if it is without the owner's consent."  While the explanatory value of such a tautological instruction may be questionable, it cannot be argued that it

invades the province of the jury to instruct them that they may not find consent to be effective where they also find no consent to exist at all.

Nor does the definition instruct the jury that they must find an essential element of the offense, but only that they are required to find a lack of effective consent where they have *first* found a lack of any consent at all, since the prior conclusion follows necessarily from the latter. A juror who found that a defendant had no consent to enter a habitation could not then rationally conclude that the defendant had effective consent to enter.

Thus, the inclusion of this instruction was not error. Even if it was error for the court to include an instruction not expressly provided by statue, regardless of whether the instruction accurately describes the law, any such error would be harmless and would not have deprive Appellant of a fair and impartial trial.

Finally, Appellant argues that the State and the trial court misstated the law during voir dire in such a way that misled the jury. According to Appellant, these statements created a false impression that the law required "consent for every action taken in a person's home." It should first be noted that Appellant did not object to the statements at the time they were made and so did not preserve any alleged error. Nevertheless, we believe

Appellant mischaracterizes the statements and overestimates their effect on the jury.

The statements at issue were made in the context of a discussion about the concept of effective consent. The full context of the statements shows that they did not misstate the law or mislead the jurors regarding the meaning of effective consent, but instead fleshed out the concept that consent can be ineffective if induced by fraud, i.e. that a person who misrepresents the reason for their entry into another's residence can render any consent to enter ineffective. *See Gordon v. State*, 633 S.W.2d 872 (Tex. Crim. App. 1982). This is an accurate statement of the law, and any confusion caused by this discussion in the presence of the venire did not result in the sort of egregious harm required by *Almanza* for reversal.

## ARGUMENT ON REPLY TO ISSUE NO. 3

**The trial court did not abuse its discretion by refusing to permit the testimony of Raul Munoz on the issue of Appellant's eligibility for jury recommended community supervision.**

## Standard of Review

A trial court's evidentiary rulings are reviewed for abuse of discretion. *Montgomery v. State,* 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (en banc). The trial court's ruling will not be disturbed if it is "within the zone of

reasonable disagreement." *Winegarner v. State,* 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). Instead, the ruling will be upheld if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Willover v. State,* 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

A defendant is eligible for jury recommended community supervision only if before the trial begins the defendant files a written sworn motion with the judge that the defendant has not previously been convicted of a felony in any state, and the jury enters in the verdict a finding that the information in the defendant's motion is true. Tex. Code Crim. Proc. Art. 44.12 § 4(e).

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Tex. R. Evid. 602. A lay witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness. Tex. R. Evid. 701.

#### Analysis

The trial court did not abuse its discretion by sustaining the State's objection to the proffered testimony of Raul Munoz since Munoz could not provide competent evidence that Appellant had never been convicted of a felony in any state.

Munoz testified at both phases of trial. At the guilt/innocence phase he testified that he was 36 years old, he had known Appellant for four and a half years, and was her common law husband. R.R. Vol. 3, pp. 25-35. At the punishment phase, Munoz reiterated that he had not known Appellant for her entire life. R.R. Vol. 4, p. 46. When asked about details of Appellant's educational background, Munoz was unable to answer with certainty; he could not remember what colleges Appellant attended and was not familiar with her areas of study. R.R. Vol. 4, pp. 46-47.

The parties then questioned Munoz outside the presence of the jury to establish whether he could testify from personal knowledge that Appellant had never been convicted of a felony in any state. R.R. Vol. 4, pp. 66-70. Munoz stated that, to his knowledge, Appellant had never been convicted of a felony but, under cross-examination, admitted that he had no personal knowledge of Appellant's criminal history beyond the last five years. R.R. Vol. 4, p. 67-68.

Appellant argues that Munoz should have been permitted to offer *opinion* testimony that Appellant had never been convicted of a felony offense, based on his own limited personal knowledge of Appellant's criminal history and rational inferences therefrom, and that such opinion

testimony would have been sufficient to allow the issue of Appellant's eligibility for community supervision to be submitted to the jury.

This interpretation of Rule 602 and Rule 701, if accepted by the Court, would produce a very strange situation in which practically any witness, regardless of their lack personal knowledge of a defendant's actual criminal history, could require a trial court to submit the issue of that defendant's eligibility for community supervision to the jury by merely establishing a passing familiarity with the defendant, testifying that to their limited knowledge the defendant has never been convicted of a felony, and then testifying to their opinion that the defendant has *never* been convicted of a felony *in any state*, based on their own minimal knowledge.

Appellant's argument fails because Rule 701 does not authorize a witness to offer any opinion as long as he has some personal knowledge relating to a fact in issue, but only those opinions or inferences that are rationally based on the witness's perception or personal knowledge. Tex. R. Evid. 701. Appellant asserts that "[i]t was a reasonable conclusion for Mr. Munoz to form his opinion, belief, or inference [that Appellant had never been convicted of a felony offense in any state] because of the many experiences within his personal knowledge." But the trial court disagreed, implicitly finding that Munoz's limited knowledge of Appellant's life and

criminal history prior to their meeting made irrational any inference that Appellant had never been convicted of a felony.

Appellant cites *Osbourn v. State*, 92 S.W.3d 531 (Tex. Crim. App. 2002) in support of her claim that Munoz's opinion testimony should have been admitted. But *Osbourn* illustrates precisely why the trial court did not abuse its discretion in excluding Munoz's testimony. In *Osbourn*, the court held that a lay witness's "opinion that appellant possessed marijuana, based on the odor she smelled and the green, leafy substance she saw, was one that a reasonable person could draw from the circumstances." *Osbourn v. State,* 92 S.W.3d at 538. This is a very different situation than the case at bar, where Appellant urges that a reasonable person could form an opinion that a particular person had never been convicted of a felony in any state based on their personal knowledge that the person had not been convicted of a felony in the four and a half years the witness had known them. Such a conclusion simply cannot be rationally inferred from Munoz's limited personal knowledge.

Appellant also cites *Trevino v. State*, 577 S.W.2d 242 (Tex. Crim. App. 1979) for the proposition that "when testimony reasonably supports a defendant's motion for probation, the issue should be submitted to the jury." But by comparing the facts in *Trevino* to the case at bar, it becomes clear that

Munoz's testimony did not "reasonably support" Appellant's motion for probation, and was properly excluded. In *Trevino*, the appellant's wife testified in support of his application for probation that she had known appellant since he was ten years old and that he had not been convicted of a felony during that time. The Court of Criminal Appeals said that such testimony was sufficient to require a charge on probation. Mr. Munoz, on the other hand, only knew Appellant for four and a half years, admitted that he had no personal knowledge of her criminal history prior to meeting her, and was unable to answer other basic questions about her personal history.

The trial court did not abuse its discretion by excluding Munoz's testimony, because the record reasonably supports the conclusion that Munoz's personal knowledge was not sufficient to support a rational inference that Appellant had never been convicted of a felony in any state. Even if the trial court erred in excluding Munoz's testimony, any error would be subject to harm analysis. *Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002). Any error was harmless in light of the fact that Appellant had the option to produce other competent evidence to prove that she had never been convicted of a felony, and did so. The jury was given the option of placing Appellant on probation but instead elected to sentence her to a term of 18 years confinement, a term that could not be probated.

## ARGUMENT ON REPLY TO ISSUE NO. 4

**Appellant's Fifth Amendment right against self-incrimination was not violated when she chose to testify in order to establish her eligibility for jury recommended community supervision.**

The proposition that a criminal defendant cannot be compelled to take the stand and give evidence against herself is so well understood that it requires no citation of authority to support it. *Brumfield v. State*, 445 S.W. 2d 732, 735 (Tex. Crim. App. 1969)(overruled on other grounds). This constitutional right may, of course, be waived if done knowingly, voluntarily and intelligently, and it is well established that when an accused takes the stand she waives her privilege against self-incrimination. *Id.* A defendant who takes the stand as a witness is subject to the same rules as any other witness. She may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against herself, cross-examined as to new matter, and treated in every respect as any other witness testifying in behalf of defendant. *Holder v. State*, 140 Tex. Crim. 55, 58, 143 S.W.2d 613 (Tex. Crim. App. 1940).

Appellant claims that her decision testify at the punishment phase of trial was not made knowingly, intentionally, or voluntarily because she felt impelled to do so only to establish her eligibility for probation, and she

would not have chosen to testify had she been able to offer other competent evidence of her eligibility for probation. Appellant analogizes her situation to *Sweeten vs. State*, 693 S.W.2d 454 (Tex. Crim. App. 1985), in which a defendant was impelled to testify in order to overcome the impact of the improper introduction of illegally obtained evidence.

Appellant's argument fails for several reasons. First, Raul Munoz's testimony was properly excluded. *See supra.* Second, even assuming *arguendo* that Raul Munoz's testimony was improperly excluded, we are unaware of any authority supporting the assertion that a defendant's right against self-incrimination is not voluntarily waived when that defendant takes the stand in order to provide otherwise excluded evidence. Such a situation is very different from one in which a defendant's decision to testify is fundamentally tainted by the State's introduction of illegally obtained evidence. *See Sweeten v. State*, 693 S.W.2d at 458. In that situation, the State is required to establish that the illegally obtained and improperly introduced evidence did not impel the defendant to testify. *Id.* at 459. Here, since the State has not created any improper or illegal impetus for Appellant to testify, we bear no burden to explain Appellant's reasons for electing to do so. *See Sherlock v. State*, 632 S.W.2d 604, 606-07 (Tex. Crim. App. 1982).

Appellant stated on the record prior to the exclusion of Raul Munoz's testimony and prior to her election to testify that she fully understood all the advantages and disadvantages of testifying. R.R. Vol. V, p. 64. While Appellant's trial counsel did also state that her election to testify was the result of the court's decision to exclude Mr. Munoz's testimony, she cannot claim that she was improperly compelled testify since the court did not abuse its discretion in excluding Munoz's testimony.

Furthermore, even if Munoz's testimony was wrongfully excluded, Appellant has not established that her own testimony was required to prove her eligibility for community supervision. It may be true, as Appellant now claims, that "there were no other witnesses available, in the heat of trial, that would have been able to testify they had known Appellant her entire life and make the offer that she never had been convicted of a felony," but that does not mean that no such competent evidence existed or that it could not have been secured for presentation at trial.

Appellant was not called to the stand by the State. *See Birdsong v. State*, 82 S.W.3d 538 (Tex. Crim. App. 2002). She was not compelled to testify. She voluntarily waived her right against self-incrimination, with a full understanding of the potential for impeachment, apparently believing that it was worth the risk in order to establish her eligibility for community

supervision. Appellant now asks the Court to find that Appellant's own inability to produce competent evidence of her eligibility for community supervision, aside from her own testimony, rendered her decision testify involuntary. The court should decline to do so.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** the State prays the Court deny Appellant's appeal and affirm the judgment of the trial court.

Respectfully submitted,

OFFICE OF THE DISTRICT ATTORNEY
33rd and 424th JUDICIAL DISTRICTS
Wiley B. McAfee, District Attorney
P.O. Box 725
Llano, Texas 78643
Telephone: (325) 247-5755
Telecopier: (325) 247-5274

/S/ R. Blake Ewing

By: _____
R. Blake Ewing
Assistant District Attorney
State Bar No. 24076376
ATTORNEY FOR APPELLEE

## CERTIFICATE OF COMPLIANCE

This is to certify that the pertinent portion of this brief contains 6,406 words printed in Times New Roman 14-point font, according to the Microsoft Word™ 2013 word count tool.

/S/ R. Blake Ewing

_____

R. Blake Ewing

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the above and foregoing instrument, together with this proof of service hereof, has been forwarded on the 25th day of November, 2015, to Mr. Gary Prust, Attorney for Appellant, by email at gary@prustlaw.com

/S/ R. Blake Ewing

_____

R. Blake Ewing
Assistant District Attorney