Willie Curtis MAYFIELD, Appellant,

v.

STATE of Texas, Appellee.

Nos. 11–04–00287–CR, 11–04–00288–CR.

Court of Appeals of Texas,
Eastland.

Feb. 16, 2006.

Rehearing Overruled May 4, 2006.

James R. Matthews, J.R. Matthews & Associates, LLC, Boyd, for appellant.

Tim W. Ford, Dist. Atty., Palo Pinto, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and, STRANGE, J.

## OPINION

RICK STRANGE, Justice.

The jury convicted Willie Curtis Mayfield of killing Emma London[1] and Fran-

---

1. Cause No. 11–04–00288–CR.

cis P. Hodges[2] while burglarizing, or attempting to burglarize, their home. The State elected not to seek the death penalty; therefore, the trial court sentenced appellant to life in prison in each cause. Appellant challenges his convictions, alleging the evidence is legally insufficient to support a finding that he entered the victims' house without their consent and, therefore, is legally insufficient to establish burglary. We find no error and affirm appellant's convictions.

### Issues and Standard of Review

Appellant challenges his convictions with a single issue, contending the trial court abused its discretion when it denied his Motion for Judgment Non Obstante Veredicto and his Motion for New Trial because the evidence was legally insufficient to establish beyond a reasonable doubt the nonconsensual entrance necessary to prove the underlying offense of burglary.

It is unnecessary for appellant to establish an abuse of discretion. Appellant was convicted by a jury. The trial court made no findings of fact. Therefore, we do not afford deference to the trial court's decision to deny appellant's post-trial motions. Instead, we conduct an independent review of the evidence to determine if the jury's decision was based upon legally sufficient evidence.

■ Our review is guided by well-settled standards. We review the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). We consider all the evidence that sustains the conviction, whether properly or improperly admitted or whether introduced by the prosecution or the defense. *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.

App.2001). We then determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson*, 23 S.W.3d at 7.

### The Evidence

### The Police Investigation

Emma London and Francis P. Hodges were sisters who lived together in Mineral Wells. London was eighty years old, and Hodges was seventy-five. They were brutally beaten and stabbed to death in their home during the early morning hours of June 30, 1983.

Jerry White was a detective with the Mineral Wells Police Department in 1983; and he assisted in the investigation. He testified that the back door was identified as the killer's probable point of entry. There was no sign of a forced entry, but the back door was standing open while the front door was closed and had to be forced open. The house had been ransacked. Drawers had been opened, and their contents removed. London's and Hodges's purses had been spilled. Clothing was dumped on the floor.

London's and Hodges's bodies were found lying on the kitchen floor. Both had blunt force trauma wounds to their heads. The police located three murder weapons at the scene. They found a blood-stained pipe and a paring knife near the front door and a blood-stained cane in the kitchen.

The police determined that the crime occurred at night before the victims had retired to bed. Both were wearing nightclothes, but one still had on shoes. The police learned that London and Hodges maintained a routine and that it was not unusual for them to stay up late. Neighbors told the police that London and

---

2. Cause No. 11–04–00287–CR.

Hodges's T.V. was still on at 2:30 a.m. The police also learned that London and Hodges kept their doors locked and that they let few people into their home.

The police believed that the killer's motive was theft and that this was a burglary gone bad. Besides the condition of the house, they found a significant amount of money still at the scene. The day of the murders, Annette Berkins gave the police two blood-stained pillowcases that she claimed were given to her by Kevin Cross; and she told the police that they had possibly come from the crime scene. Subsequent events were consistent with a theft hypothesis. Bobby Williams lived next door. He acted as London and Hodges's caretaker. The police learned that he was pawning jewelry and old coins, although they could not prove these items came from the house. Adrian Wright lived across the street with her boyfriend Kevin Cross. She passed large bills at a grocery store after the murders.

The initial investigation did not reveal sufficient information to support an indictment, but the case was never closed. In 2001, the district attorney's office received a letter from an inmate purporting to provide information on the crime. The investigation resumed; and Cross, Gerald Taylor, and Wright were subsequently indicted for two counts of capital murder. Cross was convicted and received two life sentences. Taylor was convicted of robbery.

Taylor and his sister provided statements after his conviction. Then, the police received a letter from an inmate in the Palo Pinto County Jail. This additional information led to appellant's indictment.

*Trial Testimony*

Taylor testified that on the night of the murders he was hanging out with appellant and Cross. They were drinking and smoking marihuana. Appellant told them he had heard London and Hodges had a lot of money. Appellant and Cross went to London and Hodges's house between 2 and 3 a.m. to steal their money. Taylor's role was to be the lookout and make sure nobody walked up on them. When appellant and Cross came out of the house, they had blood on them. This surprised Taylor because he thought that it was going to be a regular burglary and that the ladies would probably be asleep. He did not think anyone was going to get killed.

Wright also testified. She was under indictment for the murders but had not yet been tried at the time of appellant's trial. She was living with Cross in 1983. On the day of the murders, Cross and appellant came into her house. Both had blood on their shirts. Appellant told Cross to send Wright to the victims' house to see if they were dead. She saw that both ladies were on the floor not moving.

The jury also heard from an informant, Raymond Travis Poole. Poole testified that he grew up in Mineral Wells, that he had been in and out of trouble all of his adult life, and that he was serving a life sentence for delivering drugs. Poole knew Taylor, Wright, Cross, and appellant. Poole was in prison at the time of the murders, but he got out of prison in September of 1983 and returned to Mineral Wells. Cross discussed with him what had happened to London and Hodges. Appellant also talked to Poole about the murders and told him what had happened. Appellant told Poole that there was a lot of money in the house and that he and Cross killed the women. Appellant told Poole that there was supposed to be just one of the ladies in the house and that Hodges "woke up or something." Appellant told Poole that this surprised him and that things "kind of got out of hand." Hodges knew who appellant and Cross were. Appellant told Poole that, after Hodges saw

them, they started beating and stabbing the ladies. After that, they tore up the house and found a few thousand dollars.

### Is the Evidence Legally Sufficient?

■ The indictments alleged burglary as the underlying offense. The State was, therefore, required to prove that (1) appellant (2) without effective consent of the owner (3) entered a habitation or building (4) not then open to the public (5) with the intent to commit a felony, theft, or assault. TEX. PEN.CODE ANN. § 30.02(a)(1) (Vernon 2003).[3] Appellant contends the evidence was legally insufficient to establish beyond a reasonable doubt that he entered London and Hodges' house without their consent. "Consent" is defined by statute as assent in fact, whether express or apparent. TEX. PEN.CODE ANN. § 1.07(a)(11) (Vernon 2003).[4] Consent is not effective if induced by force, threat, or fraud. TEX. PEN.CODE ANN. § 1.07(a)(19)(A) (Vernon 2003).[5]

■ Appellant argues that the direct evidence demonstrates that a robbery and struggle took place but not a burglary because there was no forced entrance and because no witness provided any testimony that the entrance was without consent. The Penal Code does not require a forced entry, and burglary convictions have been affirmed in a variety of circumstances without one.[6] As one court has noted, a "person can make an unlawful entry by walking through an open door when the entry is without the owner's consent." *Evans v. State*, 677 S.W.2d 814, 818 (Tex. App.-Fort Worth 1984, no writ). Nor is

direct testimonial evidence required because the State may prove lack of consent to enter by circumstantial evidence. *Hathorn v. State*, 848 S.W.2d 101, 107 (Tex. Crim.App.1992).

Appellant contends that the evidence (such as the absence of any damage to the back door and the fact that murder weapons came from inside the house) leads to the rational inference that the victims were up late watching T.V. and unlocked their back door to allow Williams, accompanied by others to enter the house. Appellant concludes this would support a robbery conviction, which as appellant notes is what Taylor was convicted of, but not burglary. Appellant acknowledges Taylor's testimony that he was a lookout; however, he argues that this is insufficient because a lookout could be used for either burglary or a robbery. Therefore, use of a lookout is not indicative of a burglary.

■ This argument assumes that circumstantial evidence cannot support a conviction if it supports more than one interpretation and has been rejected by the Texas Court of Criminal Appeals in *Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim. App.1991)(it is unnecessary for the State to show that circumstantial evidence excludes every other reasonable hypothesis than the guilt of the defendant). Consequently, the mere fact that some of the circumstantial evidence might lead to more than one inference does not mean that it cannot support a finding of guilt. Appellant's briefs ably demonstrate that one can construe the circumstantial evidence to

---

3. Section 30.02 has been amended since 1983, but those amendments did not alter the applicable elements for appellant's alleged offense.

4. This definition was applicable in 1983.

5. This provision was applicable in 1983.

6. *Ellis v. State*, 726 S.W.2d 39 (Tex.Crim.App. 1986)(en banc); *Gordon v. State*, 633 S.W.2d 872 (Tex.Crim.App.1982); *Nelson v. State*, 905 S.W.2d 63 (Tex.App.-Amarillo 1995, no writ); and *Tatum v. State*, 649 S.W.2d 139 (Tex.App.-Fort Worth 1983, writ ref'd).

support more than one conclusion. The jury's role was to resolve conflicting testimony. This includes choosing between different theories of the case. *Id.* at 159.

None of the participants testified that Williams was involved. The jury, therefore, was not required to infer that he helped appellant and Cross gain entrance into the house. Even if the jury determined that he did participate by word or deed, that did not require the jury to infer effective consent was present. The Penal Code specifically provides that consent is not effective if procured through fraud. Section 1.07(a)(19)(A). Appellant and Cross went to London and Hodges's house to steal money. The jury could reasonably conclude that, if Williams agreed to participate by convincing London and Hodges to open the back door to let appellant and Cross in, this did not constitute effective consent on their part. *See Ellis v. State*, 726 S.W.2d 39, 40–41 (Tex.Crim.App. 1986)(en banc)(jury could reasonably infer lack of consent when defendant admitted to another inmate that he had gone to the decedent's apartment to steal money and jewelry); *Gordon v. State*, 633 S.W.2d 872, 874–75 (Tex.Crim.App.1982)(effective consent is not present when defendant gained entrance under pretext of wanting to use the phone).

If Williams was not involved and if appellant and Cross talked their way into the house, any consent would not amount to effective consent unless they gave London or Hodges the real reason for their visit. The jury could have determined it was improbable that appellant and Cross were honest with the victims and that they were then voluntarily invited into the home.

The jury had other evidence pointing to a burglary. Appellant, Cross, and Taylor decided to steal money from London and Hodges during the early morning hours of June 30, 1983. Appellant and Cross went to their house between 2 and 3 a.m. to commit the crime. They posted Taylor as a lookout. Appellant and Cross took no weapons with them, and there was no evidence anyone expected trouble.

The jury not only could consider the general improbability that two older ladies would voluntarily invite visitors into their home between 2 and 3 a.m. but also had specific information indicating London and Hodges were unlikely to have done so. The jury was told that London and Hodges tended to keep their doors locked and that they normally did not allow people into their home. Police pictures showed that both women were wearing nightclothes and that one was partially undressed. Each of these factors could lead a reasonable juror to conclude appellant and Cross were not voluntarily invited into the home.

Finally, London and Hodges were apparently murdered because Hodges recognized appellant and Cross. No other reason or motive was ever identified. Because appellant and Cross took no weapons with them and did not expect trouble, the jury could reasonably conclude that they went to the house believing they could get in, steal the money, and get out without being recognized. This is inconsistent with a consensual entry.

### Conclusion

■ The jury is entitled to draw reasonable inferences from basic facts to ultimate facts. *McIntosh v. State*, 855 S.W.2d 753, 763 (Tex.App.-Dallas 1993, pet. ref'd). We hold that, when the evidence is considered in the light most favorable to the verdict, a rational trier of fact could conclude beyond a reasonable doubt that appellant went into London and Hodges's home without their effective consent and that he murdered them while committing or attempt-

ing to commit a burglary. Appellant's sole issue is overruled.

The judgments of the trial court are affirmed.