Opinion filed November 25, 2025



## In The

# Eleventh Court of Appeals

_____

## No. 11-23-00256-CR
_____

### KIONNE DEVAUGHN LEWIS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR57240**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Kionne Devaughn Lewis, of capital murder and aggravated assault. *See* TEXAS PENAL CODE ANN. §§ 19.03(a)(2); 22.02(a) (West Supp. 2024). For the offense of capital murder, the trial court assessed his punishment at confinement for life without the possibility of parole and for the offense of aggravated assault, confinement for twenty years, to be served concurrently in the Correctional Institutions Division of the Texas Department of

Criminal Justice.  In three issues, Appellant asserts that the evidence is insufficient to support his conviction for capital murder, that the trial court erred by refusing to instruct the jury on the lesser-included offense of manslaughter, and that the trial court erred by admitting evidence of prior domestic abuse.  We affirm.

*Background Facts*

Appellant was previously in a dating relationship with Travae Jackson, the murder victim in this case.  Jackson's friend, April Eldridge, described the relationship as "on-again, off-again" and observed that Jackson was scared of Appellant.  According to Eldridge, Jackson ended the relationship with Appellant around August 29, 2021.[1]

On September 26, Eldridge and Jackson were exchanging text messages while Jackson was making dinner for her friend, Matisse Guidroz.  In the early morning hours of September 27, Jackson sent Eldridge a photo that showed Appellant on her balcony accompanied by a text message that said, "If anything happens to me, [Appellant] did it."

Jackson recorded two videos of her interacting with Appellant while he was on her balcony.  In the videos, Jackson was behind a sliding glass door, and she repeatedly told Appellant to leave.  The first video shows Appellant attempting to open the locked sliding glass door.  In the second video, Jackson stated, "So you, you're saying that you're going to murder me."  Appellant can then be seen making a shooting gesture toward Jackson.  Jackson then said, "Oh, you're gonna shoot me." Appellant kicked the sliding glass door, and Jackson told him to stop and repeatedly asked him to leave.  At the end of the video, Jackson stated that if anything happened to her, Appellant did it.  Jackson sent the videos to both Eldridge and Guidroz.

---

[1]Unless otherwise noted, all dates in this opinion occurred in 2021.

2

On the night and early morning hours of September 26 and 27, Appellant and Jackson exchanged phone calls and text messages. Just after midnight, Jackson told Appellant in a text message to go home. Jackson continued to tell Appellant to leave, and she said, "It makes no sense that u [sic] are stalking me the way you are." Jackson said that Appellant "came over here uninvited" and that he was making her uncomfortable. There was a phone call between Jackson and Appellant at 1:10 a.m., and the last communication was an audio message from Appellant to Jackson at 1:28 a.m.

Guidroz testified that he and Jackson had been romantically involved at one time, but that on September 26, they were in an "ongoing friendship" because Appellant was "in the picture." Guidroz stated that Appellant harassed him and sent him threatening text messages after Jackson and Appellant ended their relationship in August 2021.

On September 26, Guidroz went to Jackson's apartment for dinner. The two watched a movie after dinner, and then Guidroz left. After he left, Guidroz and Jackson exchanged text messages. At 1:16 a.m. on September 27, Jackson sent Guidroz the video of Appellant on her balcony. Guidroz was worried about Jackson, but he went back to sleep after watching the video. At 10:17 a.m. that morning, Guidroz received a text message from Jackson's phone asking him to come over. Guidroz responded that he would come over and bring breakfast. He received another text from Jackson's phone saying that the door would be unlocked.

Guidroz picked up food and then went to Jackson's apartment. He went inside the apartment and put the food down on the table. Guidroz then saw Appellant with a gun pointed at him. Appellant told Guidroz, "I don't want to do this to you" and then shot him. Guidroz ran from the apartment, and Appellant shot him again. Guidroz escaped to his vehicle where he had a gun. As Guidroz was leaving in his vehicle, he saw Appellant run down the street with a gun and get in his pickup.

Guidroz then fired two to three shots at Appellant's pickup. Guidroz called 9-1-1 to report the shooting, and emergency personnel instructed him to stop following Appellant. Guidroz then pulled into a parking lot and waited for police to arrive. He was taken by ambulance to a hospital where he was treated for gunshot wounds to his shoulder and side.

Midland Police Lieutenant Ed Marker responded to a call of "shots fired." While investigating, he learned of another possible shooting at a nearby apartment complex. Lieutenant Marker went to Jackson's apartment where he found her deceased in the upstairs bedroom. Detective Rosie Rodriguez testified that Jackson suffered severe head trauma from a gunshot wound to the top of her head. Detective Rodriguez observed brain matter on the bedroom wall and floor. Jackson also had gunshot wounds on her thigh, abdomen, and hand. Jackson suffered a blunt force injury to her head resulting in skull fractures as well other scrapes and abrasions.

Appellant was apprehended in New Mexico on September 28. A New Mexico police officer took custody of a black AR-15 style rifle found near where Appellant was apprehended. That weapon was found to have fired a spent projectile that was located in Jackson's bedroom. Appellant was charged with capital murder and murder in relation to Jackson's death and with the aggravated assault of Guidroz.

*Analysis*

*Sufficiency of the Evidence*

In his first issue, Appellant argues that the evidence is insufficient to support his conviction for capital murder. We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements

4

of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits the offense of murder if the person intentionally or knowingly causes the death of an individual. PENAL § 19.02(b)(1). As applicable to this case, a person commits the offense of capital murder if he commits murder as defined in Section 19.02(b)(1) and intentionally commits the murder in the course of committing or attempting to commit burglary. *Id.* § 19.03(a)(2). A person commits the offense of burglary if, without the effective consent of the owner, the

5

person enters a habitation "with intent to commit a felony, theft, or an assault." *Id.* § 30.02(a)(1).

Appellant contends that "there is no dispute that Jackson was murdered." He argues, however, that the evidence was insufficient to prove the predicate offense of burglary, and thus, insufficient to support his conviction for capital murder. Appellant asserts that there was no evidence presented on the element of lack of effective consent required to prove burglary.

Appellant contends that the evidence shows only that he was inside of Jackson's apartment at the time of her murder, not that he was in the apartment without consent. He notes that there was no evidence that he used force to enter the apartment and that the jury was required to make multiple inferences in order to conclude he entered without consent. Appellant asserts that from the evidence adduced at trial, it is just as likely that Jackson voluntarily let him into the apartment after the last phone call.

However, a forced entry is not required to prove burglary, and burglary convictions have been affirmed in a variety of circumstances without one. *Mayfield v. State*, 188 S.W.3d 316, 319 (Tex. App.—Eastland 2006, pet. ref'd). A "person can make an unlawful entry by walking through an open door when the entry is without the owner's consent." *Id.* (quoting *Evans v. State*, 677 S.W.2d 814, 818 (Tex. App.—Fort Worth 1984, no writ)).

Although Appellant asserts that there was no evidence of a forced entry into Jackson's apartment, Detective Rodriguez testified that there were pry marks on the sliding glass door of Jackson's apartment where the locking mechanism would be. Therefore, there was some evidence of a forced entry.

In addition, the record shows that Appellant showed up at Jackson's apartment uninvited. The jury viewed videos of Appellant on Jackson's apartment balcony. The videos showed Appellant trying to open the locked sliding glass door at

6

Jackson's apartment, and Jackson repeatedly telling him to leave. In the videos, Jackson said that Appellant was going to murder her. When Jackson asks how he was going to murder her, Appellant made a gesture indicating that he would shoot her. At the end of the video, Jackson stated that if anything happens to her, Appellant did it.

Appellant asserts that "[f]rom the evidence adduced at trial it [was] just as likely [that] Jackson voluntarily let [Appellant] into the house after the four-minute phone call as it [was] that he muscled his way into her apartment." Direct testimonial evidence is not required because the State may prove lack of consent to enter by circumstantial evidence. *Hathorn v. State*, 848 S.W.2d 101, 107 (Tex. Crim. App. 1992); *Mayfield*, 188 S.W.3d at 319. Moreover, it is unnecessary for the State to show that circumstantial evidence excludes every other reasonable hypothesis than the Appellant's guilt. *See Mayfield*, 188 S.W.3d at 319. The mere fact that some of the circumstantial evidence might lead to more than one inference does not mean that it cannot support a finding of guilt. *Id.* The jury's role was to resolve any conflicting testimony, including choosing between different theories of the case. *Id.* at 320.

In addition, the factfinder is permitted to make reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. Based upon the foregoing evidence, the jury could have reasonably concluded that Appellant entered the apartment without Jackson's effective consent. As we have said, Appellant can be seen trying to open the locked sliding glass door, and the evidence showed pry marks on that door. Further the jury was entitled to reason and infer that after she repeatedly asked him to leave and after he indicated that he would shoot her, it was unlikely that Jackson had a change of heart by consenting to Appellant's entry into her apartment.

7

When the evidence is considered in the light most favorable to the verdict, a rational trier of fact could conclude beyond a reasonable doubt that Appellant entered Jackson's apartment without her effective consent and committed the offense of murder. *See Jackson*, 443 U.S. at 319. Therefore, we hold that the evidence is sufficient to support Appellant's conviction for capital murder. We overrule Appellant's first issue.

*Lesser-Included Offense Instruction*

In his second issue, Appellant contends that the trial court erred by refusing his requested jury instruction on the lesser-included offense of manslaughter. Appellate courts use a two-step analysis to determine if a defendant is entitled to a charge on a lesser offense. *Ritcherson v. State*, 568 S.W.3d 667, 670 (Tex. Crim. App. 2018). "First, we compare the statutory elements of the alleged lesser offense and the statutory elements and any descriptive averments in the indictment." *Id.* at 670–71 (citing *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016)). Under this first step of the analysis, an offense is a lesser-included offense if it is within the proof necessary to establish the offense charged. *Bullock*, 509 S.W.3d at 924.

Under the second step, there must be some evidence in the record establishing that, if the defendant is guilty, he is guilty only of the lesser offense. *Wade v. State*, 663 S.W.3d 175, 181 (Tex. Crim. App. 2022). The second prong "is satisfied only if 'there is evidence which, if believed, refutes or negates every theory which elevates the offense from the lesser to the greater.'" *Ransier v. State*, 670 S.W.3d 646, 650 (Tex. Crim. App. 2023) (quoting *Ritcherson*, 568 S.W.3d at 671). "In other words, the evidence must establish that the lesser-included offense provides the jury with 'a valid, rational alternative to the charged offense.'" *Wade*, 663 S.W.3d at 181 (quoting *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007)). "[I]f more than a scintilla of evidence, from any source, raises the issue that the defendant was

guilty only of the lesser offense, then the defendant is entitled to an instruction on the lesser offense." *Id.*

As a matter of law, manslaughter is a lesser-included offense of murder. *Roy v. State*, 509 S.W.3d 315, 317 (Tex. Crim. App. 2017) (citing *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012)). Manslaughter is also a lesser-included offense of capital murder. *See Moore v. State*, 969 S.W.2d 4, 9–10 (Tex. Crim. App. 1998). As such, the only issue for our consideration is the second prong—whether there was any evidence presented at trial from which a rational jury could have found that Appellant is guilty only of the lesser-included offense of manslaughter. *See Ransier*, 670 S.W.3d at 650.

The difference between murder and manslaughter is the culpable mental state, intent versus recklessness. *Cavazos*, 382 S.W.3d at 384; *compare* PENAL § 19.04(a) (stating that a person commits manslaughter if he recklessly causes the death of an individual), *with id.* § 19.02(b)(1) (stating that a person commits murder if he intentionally or knowingly causes the death of an individual). A person commits manslaughter by recklessly causing the death of a person, which is acting with a conscious disregard of a substantial and unjustifiable risk regarding circumstances or results surrounding the conduct. *Cavazos*, 382 S.W.3d at 384; *see* PENAL § 19.04(a); § 6.03(c) (West 2021).

For Appellant to have been entitled to the lesser-included-offense charge of manslaughter, there must be evidence presented that manslaughter was a "valid, rational alternative" to murder. *See Cavazos*, 382 S.W.3d at 385 (quoting *Hall*, 225 S.W.3d at 536). Appellant offered no such evidence.

In support of his argument, Appellant contends that Jackson let him into her apartment. His argument follows that "[w]e do not know what occurred between [Appellant] and Jackson that ended with her death—role play, sexual activity, or an argument." He concludes that because there is nothing in the record to show that he

9

intended to kill Jackson, a jury could rationally find that he was aware of but consciously disregarding a substantial and unjustifiable risk that her death would occur.

There is nothing in the record to establish Appellant's premise that Jackson voluntarily let him into her apartment. To the contrary, the evidence is that Appellant attempted to open the locked sliding glass door at Jackson's apartment and that the sliding glass door had pry marks on the locking mechanism.

Appellant does not identify what conduct resulted in Jackson's death in which he engaged that supports manslaughter as a lesser-included offense. He does not point to any evidence to show what substantial and unjustifiable risk was present that he was aware of or ought to have been aware of that could result in her death but that he disregarded. Thus, there was no evidence directly germane to recklessness. Appellant only argues that there is no evidence he intended to kill Jackson. "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)).

"Intent can be inferred from the extent of the injuries to the victim, the method used to produce the injuries, and the relative size and strength of the parties." *Martin v. State*, 246 S.W.3d 246, 263 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)). "In a murder case, evidence of a particularly brutal or ferocious mechanism of death, inflicted upon a helpless victim, can be controlling upon the issue of intent or knowledge." *Id.*

10

The medical examiner that performed the autopsy on Jackson's body testified that she suffered extensive injuries that included blunt force injuries to the head and four gunshot wounds. The medical examiner described the blunt force trauma to Jackson's skull as follows:

> The left side of the forehead, tracking from her left eyebrow, you can see that there's an indentation that is not the normal curvature. This is because the frontal bone has been broken and is sunken in slightly. There are also some deformities of her left cheek as well, which would indicate that there are fractures of the bones there as well, with just some depression of them.

There was also testimony that Jackson was shot at a very close range to the head, abdomen, thigh, and hand. Thus, the evidence in this case does not show that Appellant merely acted recklessly and does not rise to the level that would allow a rational jury to find that, if Appellant is guilty, he is guilty only of manslaughter. *See Cavazos*, 382 S.W.3d at 385. Because there was no evidence that raised the issue of the lesser-included offense of manslaughter, the trial court did not err when it refused to submit that lesser-included offense instruction to the jury. We overrule Appellant's second issue.

*Admission of Evidence of Prior Domestic Abuse*

In his third issue, Appellant contends that the trial court erred in admitting evidence of his prior domestic abuse of Jackson. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We also uphold a trial court's evidentiary ruling if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

Appellant asserts generally that the State introduced exhibits and elicited testimony concerning prior acts of domestic violence between Appellant and Jackson. He does not specifically state what exhibits and testimony were erroneously admitted by the trial court. We have identified three incidents of domestic violence that were admitted at trial: (1) a domestic disturbance on November 24, 2020, (2) a domestic disturbance on July 18, and (3) an altercation on August 29.

Testimony concerning the November 24, 2020, domestic disturbance was admitted without objection. In addition, the 9-1-1 calls Jackson made reporting and describing the disturbance were admitted without objection. Testimony concerning the July 18 incident was also admitted without objection, as well as the 9-1-1 call Jackson made requesting assistance and describing the disturbance. Therefore, Appellant has not preserved any complaints about the first two incidents for appellate review. *See* TEX. R. APP. 33.1(a)(1).

The incident on August 29 occurred approximately one month before Jackson's death at the Midland-International Airport. Footage from the airport surveillance video was admitted into evidence over Appellant's objection. In the video, Appellant can be seen trying to force Jackson into his pickup. After a police officer arrived, Appellant left the scene in his pickup. As a result of the third incident, Appellant was charged with evading in a motor vehicle, continuous family violence, and violation of a protective order.

Appellant objected to the videos under Rules 401, 403, and 404(b) of the Texas Rules of Evidence. *See* TEX. R. EVID. 401, 403, and 404(b). He asserted that the events depicted in the videos were not relevant to the case, that they were more prejudicial than probative, and that they were not admissible under Rule 404(b). In overruling Appellant's objections, the trial court noted that the evidence was

12

admissible under Article 38.36(a) and 38.371.[2] *See* TEX. CODE CRIM. PROC. ANN. arts. 38.36(a) (West 2018), 38.371 (West Supp. 2024).

A trial court's ruling to admit extraneous-offense evidence will be upheld if it is "within the zone of reasonable disagreement." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). A trial court's ruling on extraneous-offense evidence is generally within the zone of reasonable disagreement "if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). We uphold an evidentiary ruling under any applicable theory of law, "even if the trial judge gave the wrong reason for his right ruling." *Id.* (citing *Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. 1982)).

The propriety of the trial court's admission of testimony about Appellant's interaction with Jackson on August 29 is governed by several statutes and rules, all of which must be "applied congruously." *Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006). The first is Article 38.36(a) of the Texas Code of Criminal Procedure, which allows either party, in a murder prosecution, to admit evidence of the relationship between the victim and the defendant:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding . . . the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

---

[2]Because we conclude that the evidence was admissible under Article 38.36(a), we need not address the applicability of Article 38.371.

CRIM. PROC. art. 38.36(a). However, Article 38.36(a) does not "trump" the Texas Rules of Evidence; it must be read in conjunction with them, particularly (as relevant here) Rules 401, 403, and 404. *See Smith v. State*, 5 S.W.3d 673, 677–78 (Tex. Crim. App. 1999). Rule 401 of the Texas Rules of Evidence requires that evidence be relevant. TEX. R. EVID. 401. If extraneous-offense evidence is not relevant to a fact of consequence in the case, it may not be admitted. *See id.*

Extraneous-offense evidence also must be admissible under Rule 404(b). Rule 404(b) states that extraneous-offense evidence is generally not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b). And finally, even if extraneous-offense evidence is admissible under these rules, it still may be excluded under Rule 403 of the Texas Rules of Evidence if the probative value of the evidence is substantially outweighed by its unfairly-prejudicial impact. TEX. R. EVID. 403.

Under Article 38.36(a), the evidence of Appellant's interaction with Jackson on August 29 was admissible as a demonstration of "the previous relationship existing between the accused and the deceased." *See* CRIM. PROC. art. 38.36(a). Prior acts of violence between the victim and the accused may be offered to illustrate the nature of the relationship under Article 38.36(a). *See Garcia*, 201 S.W.3d at 702.

Further, the evidence of the August 29 incident was relevant under Rule 401. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." TEX. R. EVID. 401. Whether Appellant entered Jackson's apartment without her consent was an issue at trial as well as whether he intended to kill her. Appellant's attempted abduction of Jackson approximately a month prior to her murder had a tendency to make the State's arguments that Appellant entered

14

Jackson's apartment without her consent and that he intentionally killed her more probable. In a murder case, the relationship between the victim and the accused is "itself a material issue." *Garcia*, 201 S.W.3d at 703. Therefore, the extraneous-offense evidence of the August 29 incident was relevant and admissible under Rule 401. *See Miller v. State*, No. 06-20-00015-CR, 2020 WL 4044717, at *2 (Tex. App.—Texarkana July 20, 2020, no pet.) (mem. op., not designated for publication) ("Since evidence of prior assaults against the same victim bears on the nature of the relationship between the defendant and the victim, it is relevant evidence.").

The extraneous-offense evidence of the August 29 incident was also admissible under Rule 404(b). "Rule 404(b) is a rule of inclusion rather than exclusion." *De La Paz*, 279 S.W.3d at 343. Thus "if evidence (1) is introduced for a purpose other than character conformity, (2) has relevance to a fact of consequence in the case; and (3) remains free of any other constitutional or statutory prohibitions, it is admissible" under Rule 404(b). *Segundo v. State*, 270 S.W.3d 79, 88 n.19 (Tex. Crim. App. 2008) (internal quotation marks omitted).

Whether extraneous-offense evidence has relevance apart from character conformity is a question for the trial court. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). As previously noted, Rule 404(b)(2) allows admission of extraneous-offense evidence "for another purpose, such as proving motive, opportunity, intent [or] . . . identity." TEX. R. EVID. 404(b)(2). Here, there were at least two such other purposes. The first was to show the nature of the relationship between Appellant and Jackson. *See* CRIM. PROC. art. 38.36(a). The other purpose was to show that Appellant had both an intent and motive to enter Jackson's apartment without her consent and to kill her. Therefore, the trial court did not abuse its discretion by determining that evidence of the August 29 incident was not impermissible character-conformity evidence under Rule 404(b).

15

We also conclude that the trial court did not abuse its discretion by determining that Rule 403 did not preclude the admission of the August 29 incident. Under Rule 403, a trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render*, 347 S.W.3d at 921.

In reviewing a trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990)). When conducting a Rule 403 analysis, the trial court must balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). These factors may well blend together in practice. *Id.* Rule 403, however, does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277,

284 (Tex. App.—Eastland 2009, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing test and determined that the evidence was admissible. *Id.*

The first *Gigliobianco* factor focuses on the inherent probative force of the proffered evidence. *Gigliobianco*, 210 S.W.3d at 641. As the Court of Criminal Appeals explained in *Gigliobianco*, "probative value" is more than just relevance. *Id.* It refers to how strongly an item of evidence "serves to make more or less probable the existence of a fact of consequence to the litigation[,] coupled with the proponent's need for that item of evidence." *Id.* We have already addressed the relevance of the challenged evidence to show the nature of the relationship between Appellant and Jackson.

With respect to the State's need for the evidence, Appellant asserted that Jackson voluntarily let him into her apartment. The evidence of Appellant's attempted abduction of Jackson served the State's need for evidence to rebut Appellant's contention. Further, the probative force of the evidence was significant given its nature and recency to Jackson's murder. Thus, the first two *Gigliobianco* factors weigh in favor of admission.

The remaining *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. *Garcia v. State*, 630 S.W.3d 264, 269 (Tex. App.—Eastland 2020, no pet.). The third factor focuses on the tendency of the evidence to suggest a decision on an improper basis. *Id.* at 268. Evidence is not excludable under Rule 403 if it is merely prejudicial; "all evidence against a defendant is . . . designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Instead, Rule 403 is concerned with evidence that is *unfairly* prejudicial. *Gigliobianco*, 210 S.W.3d at 641; *see Pawlak*, 420 S.W.3d at 811. The fourth factor focuses on the potential of the proffered evidence to confuse or distract the jury from the main issues, and the fifth factor focuses on the potential of the proffered evidence

to mislead the jury. *Roe v. State*, 660 S.W.3d 775, 785 (Tex. App.—Eastland 2023, pet. ref'd).

There is nothing in the record to indicate that the evidence of the August 29 incident confused the jury, was given undue weight by the jury, or resulted in a decision based on an improper basis. This was a murder case between individuals that had been in a romantic relationship. Evidence of the nature of their relationship was admissible for the reasons that we have addressed. Additionally, the trial court instructed the jury that they could not consider this evidence unless they found beyond a reasonable doubt that Appellant committed the wrongful act. The trial court further instructed the jury they could not consider this evidence to prove that Appellant is a "bad person," but rather only for specific limited purposes. We presume that the jury followed the trial court's instructions. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Therefore, the third, fourth, and fifth factors do not weigh in favor of exclusion.

The sixth factor also weighs in favor of admission because the evidence did not consume an inordinate amount of time. The airport surveillance videos were approximately two minutes in length.

Rule 403 contemplates excluding evidence only when there is a "clear disparity" between the offered evidence's prejudice and its probative value. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). Considering the standard of review, the presumption favoring admissibility of relevant evidence, and the *Gigliobianco* factors, we cannot conclude that the trial court abused its discretion in admitting the evidence. *See id.* ("Because Rule 403 permits the exclusion of admittedly probative evidence, it is a remedy that should be used sparingly." (footnote omitted)). We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgments of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

November 25, 2025

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.